s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s

| | | |
|---|---|---|
| | : | |
| Theodore Lucio, et al., | | Case No.:  3:15-cv-00613-JJH |
| | : | |
| Plaintiffs, | | (Hon. Jeffrey J. Helmick) |
| | : | |
| vs. | | **DEFENDANT EDW. C. LEVY** |
| | : | **CO.'S MOTION FOR SUMMARY** |
| Edw. C. Levy Co., et al., | | **JUDGMENT AND MEMORANDUM** |
| | : | **IN SUPPORT** |
| Defendants. | | |
| | : | |
| | : | |

s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s

**TABLE OF CONTENTS**

Page(s)

TABLE OF AUTHORITIES ................................................................................. ii

MOTION........................................................................................................1

MEMORANDUM IN SUPPORT.........................................................................2

I.    STATEMENT OF FACTS .........................................................................2

II.   LAW & ARGUMENT................................................................................5

    A.    Mr. Lucio's Negligent Design And Construction Claim Is Barred By
        Ohio's 10-Year Statute of Repose For Improvements To Real
        Property. ........................................................................................5

    B.    None Of The Exceptions To The Bar Imposed By
        R.C. 2305.131(A)(1) Apply To The Slag Plant and Tower Two. ...............11

    C.    Mr. Lucio's Product Liability Claim Fails Since The Slag Plant Is Not
        A Product........................................................................................15

    D.    The Allegations in Count V of the First Amended Complaint Provide
        Further Grounds for Dismissal of Mr. Lucio's Claims. ................................16

    E.    Ms. Lucio's Loss of Consortium Claim Must Also Be Dismissed. ...........................20

III.  CONCLUSION.........................................................................................20

PROOF OF SERVICE.....................................................................................21

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Adair v. Koppers Co., Inc.*, 741 F.2d 111 (6th Cir. 1984) .....................................................6, 7, 8, 9

*Alexander v. Motorists Mut. Ins. Co.*, 1st Dist. No. C-110836, 2012-Ohio-3911 .........................12

*Anderson v. Ruoff*, 100 Ohio App.3d 601, 654 N.E.2d 449 (Ohio App. 10th Dist. 1995) ...............................................................................................................................16

*Bailey v. Smart Papers, LLC*, No. 1:06cv463, 2009 U.S. Dist. LEXIS 27619 (S.D. Ohio Mar. 30, 2009)........................................................................................................7, 8

*Below v. Dollar General Corp.*, 163 Ohio App.3d 694, 2005 Ohio 4752 (Ohio App. 3d Dist. 2005)........................................................................................................18

*Bostic v. Connor* (1988), 37 Ohio St.3d 144, 524 N.E.2d 881 ........................................................18

*Bowen v. Kil-Kare, Inc.*, 63 Ohio St.3d 84, 585 N.E.2d 384 (Ohio 1992) ....................................20

*Brennaman v. R.M.I. Co.*, 70 Ohio St. 3d 460, 639 N.E.2d 425 (Ohio 1994)............................7, 8

*Colegrove v. Fred A. Nemann Co.*, 1st Dist. No. C-140171, 2015-Ohio-533 .........................14, 15

*Daley v. Fryer*, 3d Dist. No. 1-14-48, 2015-Ohio-930 ...................................................................14

*Dominguez v. Lanham Mach. Co., Inc.*, 122 F. Supp. 2d 852 (W.D. Mich. 2000) ....................8, 9

*Eichenberger v. Graham*, 10th Dist. No. 12AP-216, 2013-Ohio-1203...........................................12

*Fin. Inst. Track Litig. v. Heartland Bank* (*In re Heartland Payment Sys.*), MDL No. 09-2046, Civil Action No. H-10-171, 2012 U.S. Dist. LEXIS 34067 (S.D. Tex., Mar. 14, 2012) .........................................................................................................13

*Fritz v. Otis Elevator Co.*, 48 Ohio App.3d 240, 549 N.E.2d 205 (Ohio App. 9th Dist. 1988)...........................................................................................................................7

*Headley v. Home Depot U.S.A., Inc.*, No. 5:13-cv-1839, 2014 U.S. Dist. LEXIS 92571 (N.D. Ohio July 8, 2014) .................................................................................20

*Hill v. Sonitrol of Southwestern Ohio, Inc.*, 36 Ohio St.3d 36, 521 N.E.2d 780 (Ohio 1988)........................................................................................................................12

*Huff v. FirstEnergy Corp.*, 130 Ohio St.3d 196, 957 N.E.2d 3 (Ohio 2011)...........................13, 15

ii

*Hunley v. Commercial Enterprises, Inc.* 12th Dist. No. CA2002-07-066, 2003-Ohio-1068 ................................................................................................................17

*Jeffers v. Olexo*, 43 Ohio St.3d 140, 539 N.E.2d 614 (Ohio 1989) ..............................16

*Jessop v. Angelo Benedetti, Inc.*, 8th Dist. No. 80600, 2003-Ohio-3 ............................15

*Kooyman v. Staffco Constr., Inc.*, 189 Ohio App.3d 48, 2010-Ohio-2268, 937 N.E.2d 576 (2d Dist.)........................................................................................................14

*Mullis v. Southern Co. Services, Inc.*, 250 Ga. 90, 296 S.E.2d 579 (Ga. 1982) .............7

*Mussivand v. David*, 45 Ohio St. 3d 314, 544 N.E.2d 265 (Ohio 1989) .......................16

*Phillips v. Langston Corp.*, 59 F. Supp. 2d 696 (E.D. Mich. 1999) ..............................10

*Stanadyne, Inc. v. Indus. Comm.*, 12 Ohio St. 3d 199, 12 Ohio B. 264, 466 N.E.2d 171 (1984)..............................................................................................................18

*Winstrom v. C&M Conveyor, Inc.*, No. 1:13-CV-1271, 2014 U.S. Dist. LEXIS 148093 (W.D. Mich. Oct. 17, 2014)..........................................................................8, 9

*Wolf v. Big Lots Stores*, No. 07AP-511, 2008 Ohio 1837, 2008 WL 1759073 (Ohio App. 10 Dist. April 17, 2008)............................................................................18

**Statutes**

Ohio Revised Code 2305.131 ................................................................................7, 8, 11, 15

Ohio Revised Code 2305.131(A)(1) ........................................................................5, 6, 11

Ohio Revised Code 2305.131(B) ................................................................................11

Ohio Revised Code 2305.131(C) ..............................................................................11, 12

Ohio Revised Code 2305.131(D) ..............................................................................11, 12

Ohio Revised Code 2305.131(G) ..................................................................................6

Ohio Revised Code 2307.71(A)(12) ...............................................................................5

Ohio Revised Code 2307.71(A)(12)(a)(ii) ....................................................................15

Ohio Revised Code 2307.71(A)(12)(a)(iii)...................................................................15

Ohio Revised Code 4123.35 ..........................................................................................17

Ohio Revised Code 4123.74 ...............................................................................1, 17, 19

**Other Authorities**

Restatement of Law 2d, Contracts (1981), Section 302 Comment (e) ...........................................12

**Rules**

Federal Rule of Civil Procedure 56 ...............................................................................................1

**Constitutional Provisions**

Ohio Constitution. Article II, § 35 ......................................................................................1, 17, 19

3518067 .1

## MOTION

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant Edw. C. Levy Co. ("Edw. C. Levy Co.") respectfully moves the Court for summary judgment on all of Plaintiffs' claims against Defendant Edw. C. Levy Co.  Summary judgment is appropriate as there is no genuine issue of material fact that Mr. Lucio's: 1) claim under Count I of the First Amended Complaint for negligent design and construction of Tower Two of the slag plant at issue in this case is barred by Ohio's 10-year construction statute of repose for improvements to real property; 2) product liability claim under Count II of the Complaint fails since the slag plant is not a "Product" as defined under Ohio's product liability statute; and 3) claim under Count V for failing to comply with various safety regulations and standards is barred by the statute of repose to the extent it is based on negligent design and construction, and further fails as a matter of law because Edw. C. Levy Co. did not owe a duty of care to Mr. Lucio, or in the alternative, it is entitled to immunity pursuant to R.C. 4123.74 and Ohio Const. Art. II, § 35.  As a result, Ms. Lucio's derivative claim for loss of consortium must also be dismissed.

This Motion is based upon the pleadings, the statement of facts contained in the memorandum in support of summary judgment filed by Levy Environmental Service Company dba Fulton Mill Service Company ("FMS") in Case 3:14-cv-01849-JGC, before Judge Carr, the Affidavit of Robert Scholz, the depositions of Brij Sapru, Gary Frisinger, and Gregory J. Lambert, Jr., and the following Memorandum in Support and exhibits attached thereto.[1]

---

[1] The depositions of Gary Frisinger and Gregory J. Lambert, Jr. were previously filed in Case 3:14-cv-01849-JGC. (Case 3:14-cv-01849-JGC, Dkt# 26-3, 26-5).

3518067 .1

## MEMORANDUM IN SUPPORT

## I.     STATEMENT OF FACTS

This is Mr. Lucio's second suit arising from a workplace accident in which he fell off of a slag mill.  In the first suit, Mr. Lucio alleged an intentional tort claim against his employer, FMS. In this second lawsuit, Mr. Lucio now alleges that Edw. C. Levy Co. is liable for its design and construction of the slag plant tower from which he fell on February 25, 2013, along with an alleged failure to comply with certain safety regulations and standards.   (First Amended Complaint, Counts I, II and V).  Ms. Lucio filed a derivative claim for loss of consortium.  *Id.* at Count IV.[2]   Many of the salient facts of this case are in the statement of facts in the memorandum in support of summary judgment filed by FMS in Mr. Lucio's first suit dismissed by Judge Carr on March 22, 2016.  (Case 3:14-cv-01849-JGC, Dkt. # 25-1, pp. 1-7; Order, Dkt. #41).  To avoid burdening the Court, Edw. C. Levy Co. incorporates herein the statement of facts from FMS's brief in that case.  Id.  In summary:

- Mr. Lucio was an employee of FMS;

- Slag, which is a by-product of steel, is removed from NSBS's steel making facility, and is processed at the slag plant;

- The slag plant has four separate slag mills, which are referred to as Towers One through Four.  At Tower Two, the slag is taken by conveyor to near the top of the slag mill, where it is dumped into a stone hopper or screen deck, which sifts the material through a screen to separate smaller usable material from the larger material.  The larger material goes down through a crusher and is recycled;

- On February 25, 2013, while assisting with a screen change on the screen deck of Tower Two of the slag mill, Mr. Lucio fell from an elevation requiring the use of fall protection equipment.   Mr. Lucio, who had undergone safety training required of all FMS employees, was not using the fall protection equipment available to him, fell approximately 25 feet to the ground sustaining serious bodily injury; and

---

[2] Mr. Lucio has also alleged a separate claim against Defendant North Star BlueScope Steel, LLC ("NSBS").  *Id.* at Count III.

- Although Tower Two of the slag plant did not have a guardrail around the screen deck, FMS trained employees, including Mr. Lucio, to use fall protection equipment.  This training was given annually, and most recently to Mr. Lucio about two months prior to his fall.[3]

In addition, the undisputed facts demonstrate that Edw. C. Levy Co., through its divisions, has designed and constructed slag plants for use by its subsidiaries and affiliates.  (Scholz Aff., ¶ 2). One such slag plant is the subject slag plant, which was designed and constructed for FMS, and built on the property of NSBS.  *Id.*  Edw. C. Levy Co. is not and has never been in the business of producing, manufacturing, or supplying slag plants for sale.  *Id.* at ¶ 9.  The slag plant at NSBS was designed and built solely for use by Edw. C. Levy Co.'s affiliate, FMS.  *Id.*

FMS's slag plant at NSBS was completed in 1996 or 1997 and sits on a poured foundation.  (Scholz Aff., ¶ 3; Sapru Dep., pp. 10, 32).  Edw. C. Levy Co. did not own or control the slag plant at NSBS at any time up to and including the date of Mr. Lucio's injuries.  (Scholz Aff., ¶ 10).  Its ownership, control and operation rested exclusively with FMS since the plant was completed in 1996 or 1997.  *Id.* at ¶¶ 3, 10.  There is no written agreement by which Edw. C. Levy Co. agreed to design, construct, maintain or repair the slag plant, and Edw. C. Levy Co. did not make any express written warranty as to the safety of the slag plant, or any of its components to FMS.  *Id.* at ¶ 4.

FMS has always been responsible for the slag plant's operation.  *Id.* at ¶ 3.  The original Slag Handling and Mill Services Agreement was entered into on June 14, 1996 between Butler Mill Service Company dba Fulton Mill Services Company and NSBS.  *Id.* at ¶ 5, Ex. A.  A First

---

[3] The Job Breakdown Safety Analysis for changing screens on slag mills at the slag plant lists "Manlift Harness & Lanyard" as safety equipment to be used when changing tower screens.  (Frisinger Dep., pp. 31-34, Ex. 2).  Further, the "Cardinal Rules" Mr. Lucio signed acknowledged that he would be subject to "discipline up to and including discharge" if he did not use fall protection equipment "where required".  See Defendant Levy Environmental Services Company's Responses to Plaintiffs' First Set of Interrogatories and Requests for Production of Documents. (Case 3:14-cv-01849-JGC, Dkt.# 27-1, pp. 16-17, a copy of which is attached hereto as Exhibit 1).

Amended and Restated Slag Handling and Mill Services Agreement was entered into on August 13, 2010 between FMS and NSBS.  *Id.* at ¶ 6, Ex. B.  The Mill Services Agreements provide that FMS is to be the owner of the improvements to the property, responsible for its maintenance and repair.  The original Slag Handling and Mill Services Agreement provides:

> 16. <u>Slag Plant Site Improvements</u>.  FMS intends to construct certain improvements on the Slag Plant Site . . .  (the "FMS improvements").  FMS shall remain the owner of the FMS improvements.  FMS shall maintain and repair the FMS improvements at its cost and expense.

*Id.* at ¶ 5, Ex. A, p. 13.  Similarly, the First Amended and Restated Slag Handling and Mill Services Agreement states:

> 16. <u>Slag Plant Site Improvements</u>.  FMS constructed certain improvements on the Slag Plant Site (the "FMS improvements").  FMS shall remain the owner of the FMS improvements.  FMS shall maintain and repair the FMS improvements at its cost and expense.

*Id.* at ¶ 6, Ex. B, p. 11.  The Mill Services Agreements provide that the Slag Plant Site consists of a specific 800 x 800 foot location on NSBS's property.  *Id.* at ¶ 5, Ex. A, p. 2, Section 1(n); ¶ 6, Ex. B, p. 2, Section 1(r).  This is equal to 640,000 square feet, or over 14 acres.  Plaintiffs' concede that the slag plant is "permanent."  (First Amended Compl., ¶ 8).

Under the Mill Services Agreements, FMS was to haul all Melt Shop Debris, which includes the slag from NSBS's steel making operations, to the slag plant "for processing and scrap removal or disposal."  (Scholz Aff., ¶ 5, Ex. A, pp. 2-3, Sections, 1(e), 2; ¶ 6, Ex. B, pp. 2-3, Section 1(f), 2,).  The slag is processed through the slag plant to create a rock product.  (Lambert Dep., pp. 12-13).  This rock product can be used for driveways and asphalt production, "pretty much like your regular aggregate."  *Id.* at 13.  Orders for product are received, and if there is not enough product already on site, FMS "would run that product."  *Id.* at 14.  In addition, NSBS pays FMS not only for the removal of slag as well as other components of Melt

4

Shop Debris, FMS has the right to sell, among other things, Processed Slag and Metallic Fines to third parties, subject to its obligation to pay NSBS royalties under Section 7 of both agreements. (Scholz Aff., ¶ 5, Ex. A, pp. 4, 6-9, Sections 2, 5, 7; ¶ 6, Ex. B, pp. 4, 6-7, Sections 2, 5, 7).[4]

Mr. Lucio lost his intentional tort claim against FMS.  Plaintiffs' claims against Edw. C. Levy Co. are also without merit.  Specifically, the undisputed facts show that Mr. Lucio's negligent design and construction claim against Edw. C. Levy Co. is barred by Ohio's 10-year statute of repose for improvements to real property, his product liability claim fails because the slag plant is not a "Product" under R.C. 2307.71(A)(12) of Ohio's product liability statute, and his claim regarding Edw. C. Levy Co.'s alleged safety responsibility fails under the statute of repose, there is no duty of care owed, or is barred by Ohio's workers' compensation immunity for employers.  Thus, Ms. Lucio's derivative loss of consortium claim against Edw. C Levy Co. must also be dismissed.

## II.    LAW & ARGUMENT

### A.    Mr. Lucio's Negligent Design And Construction Claim Is Barred By Ohio's 10-Year Statute of Repose For Improvements To Real Property.

Mr. Lucio's claim against Edw. C. Levy Co. for negligent design and construction of Tower Two of the slag plant is barred by Ohio's 10-year statute of repose for improvements to real property.[5]  R.C. 2305.131(A)(1) provides in relevant part:

> [N]o cause of action to recover damages for bodily injury . . . that arises out of a defective and unsafe condition of an improvement to real property . . . shall accrue against a person who performed services for the improvement to real property or a person who furnished the design, planning, supervision of construction, or construction of the improvement to real property later than ten years from the date of substantial completion of such improvement.

---

[4] FMS receives fees for returning Processed Scrap to NSBS.  *Id.* at ¶ 5, Ex. A, p. 7 Section 5; ¶ 6, Ex. B, p. 6, Section 5.

[5] Mr. Lucio also claims negligent maintenance of Tower Two of the slag plant.  But, FMS - not Edw. C. Levy Co. – maintains the slag plant.  (Scholz Aff., ¶ 5, Ex. A, p. 13, Section 16; ¶ 6, Ex. B, p. 11, Section 16).

In turn, R.C. 2305.131(G) states:

> As used in this section, "substantial completion" means the date the improvement to real property is first used by the owner or tenant of the real property or when the real property is first available for use after having the improvement completed in accordance with the contract or agreement covering the improvement, including any agreed changes to the contract or agreement, whichever occurs first.

Here, R.C. 2305.131(A)(1) bars Mr. Lucio's claim for defective design and construction for injuries he has suffered because it is an integral part of the slag plant, which is itself an improvement to real property that was substantially completed far more than 10 years before Mr. Lucio's accident.  See *Adair v. Koppers Co., Inc.*, 741 F.2d 111 (6th Cir. 1984).

In *Adair*, the plaintiff sued the defendant who designed and built a coke plant.  Plaintiff suffered injuries when his arm was caught between a pulley and a belt on a conveyor which was part of a multi-conveyor coal handling system that moved coal from railroad tracks to coking ovens.  In affirming the trial court's grant of summary judgment based on the statute of repose, the *Adair* court asserted:

> Most courts in other jurisdictions, construing statutes similar to section 2305.131, have adopted a common sense interpretation of "improvement," rather than employing fixture law.  One trial court in Ohio, after examining these two basic analyses, concluded that the "more profitable approach to the issue commences with an examination of the 'common usage of language'."
>
> Such an approach ordinarily looks to the definition of "improvements": **"[A] permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs." In applying the definition of "improvement," courts consider whether a modification adds to the value of the property for the purposes of its intended use**, as well as **"the nature of the improvement, its relationship to the land and its occupants, and its permanence."**

*Id.* at 113-114 (citations and footnote omitted and emphasis added).  That is, the *Adair* court adopted a "common sense" four-factor test to determine what constitutes an improvement to real

property: (1) whether it is an integral part of the system; (2) whether it adds value to the property; (3) the relationship to the land and its occupants; and (4) whether it is permanent.

In so doing, the *Adair* court rejected the plaintiff's desire to focus on the specific conveyor on which he was injured, asserting:

> The issue is whether a component of a system which is definitely an improvement to real property is an improvement to real property itself**. However, to artificially extract each component from an improvement to real property and view it in isolation would be an unrealistic and impractical method of determining what is an improvement to real property.**

*Id.* at 115 (quoting *Mullis v. Southern Co. Services, Inc.*, 250 Ga. 90, 296 S.E.2d 579, 584 (Ga. 1982) (emphasis added)). As a result, the conveyor "must be analyzed as an integral component" of the coal handling system (i.e., the coal handling system was the relevant unit of analysis). *Adair*, 741 F.2d at 115.

By using the coal handling system as the unit of analysis, it was clear that the coal handling system and the conveyor was an improvement to real property under R.C. 2305.131. The coal handling system was integral and essential to the coke plant's operations and enhanced the utility of the property for its intended use by moving coal from railroad tracks to processing facilities to the coke ovens. *Id.* And, the coal handling system, including the conveyor, was permanent. *Id.* at 115-116. The conveyor was bolted in place and supported by steel and concrete, and the entire conveyor system had remained in place since being designed and built almost 60 years earlier. *Id.* at 115.

This "common sense" four-factor test has been adopted in Ohio.[6] It is also applied across District Courts in the Sixth Circuit, including Ohio.[7] In *Bailey*, the court dismissed claims

---

[6] See *Brennaman v. R.M.I. Co.*, 70 Ohio St. 3d 460, 464-465, 639 N.E.2d 425, 429-30 (Ohio 1994); see also *Fritz v. Otis Elevator Co.*, 48 Ohio App.3d 240, 241-242, 549 N.E.2d 205, 207 (Ohio App. 9th Dist. 1988).

against two defendants for negligent rebuild/redesign and failure to warn arising from the decedent's death when pulled into a paper machine that had undergone a substantial rebuild/redesign 16 years earlier.

> In determining whether there is an "improvement to real property," as that phrase is used in section 2305.131, the Sixth Circuit has subscribed to a "common sense approach." *Adair v. Koppers Co., Inc.*, 741 F.2d 111, 113-14 (6th Cir. 1984). The court employs a four factor test: (1) the level of permanence of the improvement, (2) whether it became an integral part of the system, (3) whether it enhances the value of the property, and (4) whether it enhances the use of the property. *Id.* at 114. The Ohio Supreme Court has adopted the same approach: "when determining whether an item is an improvement to real property under RC §2305.131, a court must look to the enhanced value created when the item is put to its intended use, the level of integration of the item within any manufacturing system, whether the item is an essential component of the system, and its permanence. *Brennaman v. R.M.I. Co.*, 70 Ohio St. 3d 460, 1994 Ohio 322, 639 N.E.2d 425, 429-30 (Ohio 1994).

*Bailey*, No. 1:06cv463, 2009 U.S. Dist. LEXIS 27619, at *13. The *Bailey* court found that the paper machine was an improvement to real property under R.C. 2305.131 because: (1) the machine was a "permanent part of the mill and the rebuild/redesign became a permanent part of the papermaking process" as the 150 foot long machine was bolted to the floor, occupied two floors, and was "connected to the mill through pipes and heating and electrical systems"; (2) "the rebuild/redesign enhanced the value of the property by increasing the productivity of the mill and the quality of the paper"; and (3) "the rebuild/redesign enhanced the use of the property," through more than $10 million of net savings or increased profits per year. *Id.* at *14-15.

Likewise, in *Winstrom*, the court found that the plaintiffs' claims for defective product design and breach of implied warranty for injuries suffered when crushed by a materials transfer car at the husband's employer's corrugated box making plant were barred under Michigan's contractor statute of repose. Just like conveyors at the coke plant in *Adair*, "[t]he transfer cars

---

[7] See, e.g., *Bailey v. Smart Papers, LLC*, No. 1:06cv463, 2009 U.S. Dist. LEXIS 27619 (S.D. Ohio Mar. 30, 2009); *Winstrom v. C&M Conveyor, Inc.*, No. 1:13-CV-1271, 2014 U.S. Dist. LEXIS 148093 (W.D. Mich. Oct. 17, 2014); *Dominguez v. Lanham Mach. Co., Inc.*, 122 F. Supp. 2d 852 (W.D. Mich. 2000).

3518067 .1

[are] an integral component of the conveyor system, which itself is an improvement to real property." *Winstrom*, No. 1:13-CV-1271, 2014 U.S. Dist. LEXIS 148093, at *13. The transfer cars and conveyor system added value to the real property by enhancing "the utility and productivity of the corrugated materials processing by linking various machines and expediting processing times." *Id.* at *17-18. By facilitating movement of corrugated materials, the conveyor system was integral and essential to the plant's daily manufacturing operations, and was permanent having been attached to the plant by guide rails set in concrete and could only be moved using "heavy equipment and machinery." *Id.* at *18-20.

Similarly, in *Dominguez*, the court dismissed the plaintiff's case for fatal injuries caused by a commercial bake oven because the bake oven was an improvement to real property. The oven added value to the property because it allowed the company "to bake its product," which was bread. *Dominguez*, 122 F. Supp. 2d at 855-856. The oven was an "integral component" of and essential to the facility's baking system and operations. *Id.* at 856. Without the oven, the facility could make "nothing more than . . . unbaked bread." *Id.* And, the oven was permanent as it took four to five people per shift working 24/7 for two to two and a half months to install, and "was essentially a building within a building." *Id.*

Here, there can be no dispute that the slag plant, including Tower Two, is an improvement to real property under *Adair* and its progeny. The original and amended Mill Services Agreements describes the slag plant as "site improvements" and "FMS improvements." (Scholz Aff., ¶ 5, Ex. A, p. 13, Section 16; ¶ 6, Ex. B, p. 11, Section 16). The original and amended Mill Services Agreements also make clear that the purpose of the slag plant, of which Tower Two is an integral component, is providing the "slag handling and mill services requested by" NSBS for which FMS was the exclusive provider. *Id.* at ¶ 5, Ex. A, pp. 1, 3, Recital D &

3518067 .1

Section 2; ¶ 6, Ex. B, pp. 1, 3, Recital D & Section 2.  These services include removing and processing, and selling or disposing of among other things slag that is generated as a by-product of NSBS's steel-making operations.  *Id.* at ¶ 5, Ex. A, p. 3, Section 2; ¶ 6, Ex. B, p. 3, Section 2. Without the slag plant, including Tower Two, FMS could neither operate nor provide the slag handling services to NSBS for which NSBS has contracted with FMS.

There can also be no dispute that the slag plant and Tower Two are essential to FMS's daily operations and enhance the utility and value of the Slag Plant Site for its intended use.  Not only would FMS be unable to provide slag handling services without the slag plant, including Tower Two, for which it is paid by NSBS, it could not sell the useable product(s) made from processing the slag from which FMS and NSBS financially benefit respectively.  (Scholz Aff., ¶ 5, Ex. A, pp. 4, 6-9, Sections 2, 5, 7; ¶ 6, Ex. B, pp. 4, 6-7, Sections 2, 5, 7; Lambert Dep., pp. 12-14).  The slag plant *sans* Tower Two is no different than a baking factory without an oven or a conveying system minus a conveyor or rail cars.

And, the slag plant is "permanent;" Mr. Lucio has admitted it.  (First Amended Compl., ¶ 8).  Not only is Tower Two itself a large industrial structure, the slag plant covers an area of approximately 800 feet x 800 feet, or over 14 acres that has remained in place for almost 20 years, and its four towers sit on a poured foundation.  (First Amended Compl., ¶¶ 9, 11; Scholz Aff., ¶¶ 3, 5, Ex. A., p. 2, Section 1(n); Sapru Dep., pp. 10, 32;).  See *Phillips v. Langston Corp.*, 59 F. Supp. 2d 696, 703 (E.D. Mich. 1999) ("'Permanent' means that the improvement is to function for a long, indefinite period without regard to unforeseeable conditions," it does not mean eternal).

There can be no question that the slag plant, including Tower Two, is an "improvement to real property" that was substantially completed by 1997, far more than 10 years before Mr.

10

Lucio sustained his injuries on February 25, 2013.  (First Amended Compl., ¶ 18; Scholz Aff., ¶ 3; Sapru Dep., p. 10).  Accordingly, Plaintiffs' claim for negligent design and construction against Edward C. Levy is barred by the 10-year statute of repose under R.C. 2305.131(A)(1) and must be dismissed as a matter of law.

### B. None Of The Exceptions To The Bar Imposed By R.C. 2305.131(A)(1) Apply To The Slag Plant and Tower Two.

Although R.C. 2305.131 lists exceptions to the bar imposed by R.C. 2305.131(A)(1), none of them apply in this case.  R.C. 2305.131(B)-(D) provides:

(B)  Division (A) of this section does not apply to a civil action commenced against a person who is an owner of, tenant of, landlord of, or other person in possession and control of an improvement to real property and who is in actual possession and control of the improvement to real property at the time that the defective and unsafe condition of the improvement to real property constitutes the proximate cause of the bodily injury, injury to real or personal property, or wrongful death that is the subject matter of the civil action.

(C)  Division (A)(1) of this section is not available as an affirmative defense to a defendant in a civil action described in that division if the defendant engages in fraud in regard to furnishing the design, planning, supervision of construction, or construction of an improvement to real property or in regard to any relevant fact or other information that pertains to the act or omission constituting the alleged basis of the bodily injury, injury to real or personal property, or wrongful death or to the defective and unsafe condition of the improvement to real property.

(D)  Division (A)(1) of this section does not prohibit the commencement of a civil action for damages against a person who has expressly warranted or guaranteed an improvement to real property for a period longer than the period described in division (A)(1) of this section and whose warranty or guarantee has not expired as of the time of the alleged bodily injury, injury to real or personal property, or wrongful death in accordance with the terms of that warranty or guarantee.

The exceptions under 2305.131(B)-(D) do not apply to Mr. Lucio's claims.  R.C. 2305.131(B) does not apply because Edw. C. Levy Co. did not own or control the slag plant at NSBS at any time up to and including the date of Mr. Lucio's injuries. (Scholz Aff., ¶ 10).  Its

ownership and control rested exclusively with FMS since the plant was completed in 1996 or 1997. *Id.* at ¶¶ 3, 10.[8] R.C. 2305.131(C) does not apply because there is not even a hint of fraud alleged in Plaintiffs' amended complaint. Finally, R.C. 2305.131(D) does not apply because there is no express written warranty as to the safety of the slag plant, or any of its components made to FMS or its employees. *Id.* at ¶ 4.

Plaintiffs may erroneously argue that the Performance and Payment Guaranty (the "Guaranty") between Edw. C. Levy Co. and NSBS establishes some form of guarantee regarding the safety of the slag plant and its components between Edw. C. Levy Co. and Mr. Lucio. *Id.* at ¶ 7, Ex. C. "Only a party to a contract or an intended third-party beneficiary may claim rights under a contract." *Alexander v. Motorists Mut. Ins. Co.*, 1st Dist. No. C-110836, 2012-Ohio-3911, ¶ 26. The parties to the Guaranty are Edw. C. Levy Co. and NSBS, and it merely guarantees FMS's obligations to NSBS, not any obligations to FMS or its employees.

The only way Mr. Lucio could claim any rights under the Guaranty is to demonstrate that he is an intended beneficiary, **something he cannot do**. See *Hill v. Sonitrol of Southwestern Ohio, Inc.*, 36 Ohio St.3d 36, 40, 521 N.E.2d 780, 784 (Ohio 1988) (quoting Restatement of Law 2d, Contracts (1981), Section 302 Comment (e) ("Performance of a contract will often benefit a third person."); see also *Eichenberger v. Graham*, 10th Dist. No. 12AP-216, 2013-Ohio-1203, ¶ 19 ("In other words, a party who fortuitously receives some benefit from the performance of a contractual promise is an incidental, and not an intended, third-party beneficiary."). Under *Hill*, any benefit Mr. Lucio may have ever received from the Guaranty was fortuitous. In employing the test in *Hill*, the Ohio Supreme Court more recently stated:

---

[8] However, as discussed below, if Edw. C. Levy Co. was in "actual possession and control" of the slag plant, Mr. Lucio would be its employee as well and his claim would be barred by workers' compensation immunity. See Separate Answer of Edw. C. Levy Co. to First Amended Complaint, Eleventh Defense, ¶ 57.

Courts generally presume that a contract's intent resides in the language the parties chose to use in the agreement. "Only when the language of a contract is unclear or ambiguous, or when the circumstances surrounding the agreement invest the language of the contract with a special meaning will extrinsic evidence be considered in an effort to give effect to the parties' intentions." **Ohio law thus requires that for a third party to be an intended beneficiary under a contract, there must be evidence that the contract was intended to directly benefit that third party. Generally, the parties' intention to benefit a third party will be found in the language of the agreement.**

*Huff v. FirstEnergy Corp.*, 130 Ohio St.3d 196, 200, 957 N.E.2d 3, 7 (Ohio 2011) (citations omitted and emphasis added); see also *Fin. Inst. Track Litig. v. Heartland Bank* (*In re Heartland Payment Sys.*), MDL No. 09-2046, Civil Action No. H-10-171, 2012 U.S. Dist. LEXIS 34067, at *29 (S.D. Tex., Mar. 14, 2012) ("Under *Huff*, Ohio law does not allow a judge to look to 'circumstances' surrounding the contract to determine third-party-beneficiary status. Instead, a judge must consider the contract language and what it shows the contract's purpose to be.").

In *Huff*, a utility entered into a contract with a contractor to inspect and maintain trees and vegetation to ensure proper clearance for its power lines. Ms. Huff was injured when a tree limb fell on her. According to the plaintiffs, Ms. Huff was an intended third-party beneficiary of the contract because it contained an attachment for vegetation management specifications providing that "[t]he Contractor shall plan and conduct the work to adequately safeguard all persons and property from injury." *Huff*, 957 N.E.2d. at 7.

The *Huff* court rejected the plaintiffs' argument holding that "for an injured third party to qualify as an intended third-party beneficiary under a written contract, the contract must indicate an intention to benefit that third party," and found no such intent from the provision in the vegetation management attachment to the contract. *Id.* at 8. The purpose of the contract was to support the utility's electrical services by keeping power lines and equipment free from trees and vegetation. *Huff*, 957 N.E.2d. at 7; see also *Daley v. Fryer*, 3d Dist. No. 1-14-48, 2015-Ohio-

930, ¶ 33 ("to claim intended third party beneficiary status, the contracting parties must have entered into the contract for the primary purpose of that person." ).

Here, neither the Guaranty nor the original or amended Mill Services Agreement states an intention to benefit FMS's employees or any other third-party.  (Scholz Aff., ¶¶ 5-7, Exs. A-C). The sole purpose of the original and amended Mill Services Agreements is for FMS to provide NSBS with slag handling and mill services.  *Id.* at ¶ 5, Ex. A, p. 1, Recital D; ¶ 6, Ex. B, p. 1, Recital D.  The fact that there are some general safety requirements incorporated into the original and amended Mill Services Agreements through the Slag Handling and Mill Services Contract Specifications does not change that result.  *Id.* at ¶¶ 5, 8, Ex. A, p. 1, Recital B & Section 1(c), Ex. D, Section IV – Slag Handling and Mill Services Contract Specifications, pp. 2, 24, Items 2, 11.2(C); ¶ 6, Ex. B, p. 1, Sections 1(b), (d).

In *Colegrove v. Fred A. Nemann Co.*, 1st Dist. No. C-140171, 2015-Ohio-533, the plaintiffs alleged that a contractor failed to adhere to Ohio Department of Transportation ("ODOT") specifications to protect persons and property and to ensure equipment used in the project did not harm adjacent property or the public, which they asserted governed the contractor's work on a sewer pump station for the Metropolitan Sewer District of Greater Cincinnati ("MSD").  *Id.* at ¶ 15.  In rejecting the plaintiffs' argument that the ODOT specifications in the contract between the contractor and MSD created a duty to the plaintiffs, the court stated:

> **After reviewing the ODOT Specs in the contract and the law, we conclude, like the trial court, that they provide general safety requirements and do not set forth any specific duty that the Nemann Company must adhere to in terms of the means or manner of its work.** *See, e.g., Kooyman v. Staffco Constr., Inc.*, 189 Ohio App.3d 48, 2010-Ohio-2268, 937 N.E.2d 576, ¶ 14-22 (2d Dist.) (holding that the trial court erred in ruling that a construction company's failure to comply with a statute dealing with permit applications constituted negligence per se); *Huff v. First Energy Corp.*, 130 Ohio St.3d 196, 2011-Ohio-

14

> 5083, 957 N.E.2d 3 (holding that a contract specification in a contract between the utility company and a contractor which provided that "the contractor shall plan and conduct the work to adequately safeguard all persons and property from injury" did not create a duty from the contractor to members of the general public who were walking on public roads).

*Id.* at ¶ 17 (emphasis added). The general reference to "Federal Occupational Health and Safety Requirements (29 C.F.R.)" and FMS's compliance with "Public Law 91-596, 'Occupational Safety and Health Act', and such rules and regulations as promulgated by the Secretary of Labor under this Act" in Items 2 and 11.2(C) of the Slag Handling and Mill Services Contract Specifications are no different. Accordingly, none of the exceptions to R.C. 2305.131 apply, and Count I of Plaintiffs' First Amended Complaint must be dismissed.

### C.   Mr. Lucio's Product Liability Claim Fails Since The Slag Plant Is Not A Product.

Because the slag plant is not a "Product," Mr. Lucio's product liability claim under Count II fails as a matter of law. A "Product" is personal property that satisfies three criteria, two of which are: "[i]t is produced, manufactured, or supplied for introduction into trade or commerce" and "[i]t is intended for sale or lease to persons for commercial or personal use." R.C. 2307.71(A)(12)(a)(ii)-(iii); see also *Jessop v. Angelo Benedetti, Inc.*, 8th Dist. No. 80600, 2003-Ohio-3, ¶¶ 18-19 (an employee's strict product liability claims fail where a machine did not meet the statutory definition of a "Product" as there was no evidence that the machine was "produced, manufactured, or supplied for introduction into trade or commerce" or "intended for sale or lease to persons for commercial or personal use.").

While Edw. C. Levy Co. has designed and constructed slag plants for its subsidiaries and affiliates, it is not and has never been in the business of producing, manufacturing or supplying slag plants for sale. (Scholz Aff., ¶¶ 2, 9). The slag plant at NSBS was designed and built

solely for use by Edw. C. Levy Co.'s affiliate, FMS. *Id.* at ¶ 9. Accordingly, the slag plant is not a "Product," and Count II of the First Amended Complaint fails as a matter of law.[9]

### D. The Allegations in Count V of the First Amended Complaint Provide Further Grounds for Dismissal of Mr. Lucio's Claims.

In an apparent attempt to avoid the preclusive impact of Ohio's statute of repose for improvements to real property, Count V alleges Edw. C. Levy Co. is liable to Mr. Lucio for its negligence in failing to comply with various safety regulations and standards. As explained above, any alleged failure to meet applicable design standards is barred by the statute of repose. The remaining allegations in Count V involve Edw. C Levy Co.'s purported failure to comply with various OSHA safety regulations, and goes on to allege that Edw. C Levy Co. was responsible for that compliance, which applies only to employers. See, e.g, *Anderson v. Ruoff*, 100 Ohio App.3d 601, 605, 654 N.E.2d 449, 452 (Ohio App. 10th Dist. 1995) ("OSHA standards relate only to employers and do not provide a private cause of action for third parties.").

This argument fails because Edw. C. Levy Co. did not owe a duty of care to Mr. Lucio. The existence of a duty is fundamental to establishing actionable negligence, and where there is no duty of care, there can be no liability for negligence. See *Jeffers v. Olexo*, 43 Ohio St.3d 140, 142, 539 N.E.2d 614, 616 (Ohio 1989). The existence of a duty in a negligence action is a question of law for the Court. See *Mussivand v. David*, 45 Ohio St. 3d 314, 318, 544 N.E.2d 265, 270 (Ohio 1989). Here, Mr. Lucio alleges Edw. C. Levy Co.'s involvement in safety

---

[9] Notably, in *Adair*, the court found that R.C. 2305.131 barred a strict liability claim "against [the defendant] for selling a defective product," because the coal handling system, including the conveyor at issue, was an improvement to real property; holding otherwise would "undercut the protective purpose of section 2305.131." *Adair*, 714 F.2d at 116. The same would be true in this case if the Court allowed Mr. Lucio's product liability claim to proceed. See *Miller v. Consolidated Aluminum Corp.*, 729 F. Supp. 1154, 1161-1162 (S.D. Ohio 1990) (observing that the phrase "'improvement to real property' is a broad term," which includes equipment and machinery); see also *Winstrom*, No. 1:13-CV-1271, 2014 U.S. Dist. LEXIS 148093, at *21 (finding the defendants' motion for summary on the plaintiffs' product liability claims moot because "[p]laintiffs' claims are barred by the Michigan statue of repose.").

16

protocol at FMS creates the requisite duty of care.  At least one Ohio court rejected that argument, finding that a third party consultant's responsibility for safety at an employer's place of business did not create a duty of care between the third party consultant and injured employee.  See *Hunley v. Commercial Enterprises, Inc.* 12th Dist. No. CA2002-07-066, 2003-Ohio-1068.

To the extent the Court finds that Edw. C Levy Co. exerted significant control over the slag plant in regard to these safety responsibilities, and further concludes Edw. C. Levy Co. owed a duty of care to Mr. Lucio, Mr. Lucio's claims should still be dismissed because Edw. C. Levy Co. would be entitled to immunity pursuant to R.C. 4123.74 and Section 35, Article II of the Ohio Constitution.  R.C. 4123.74 provides in pertinent part:

> Employers who comply with section 4123.35 of the Revised Code shall not be liable to respond in damages at common law or by statute for any injury ... received or contracted by any employee in the course of or arising out of his employment,... during the period covered by such premium so paid into the state insurance fund, or during the interval the employer is a self-insuring employer, whether or not such injury ... is compensable under this chapter.

The certificate of coverage attached hereto as Exhibit 2 evidences that Edw. C Levy Co. is a complying employer in Ohio as R.C. 4123.35 requires, and was at the time of Mr. Lucio's accident.[10]

It is also undisputed that Mr. Lucio already received significant compensation and benefits through his workers' compensation claim with FMS, but his claim with that entity does not bar application of workers' compensation immunity to Edw. C. Levy Co. "The Supreme Court of Ohio has clearly stated that, for purposes of R.C. 4123.74, workers' compensation

---

[10] The Certificate of Coverage issued by the Ohio Bureau of Workers' Compensation is a government maintained public document of which the Court may take judicial notice.  Edw. C. Levy Co.'s active policy status may also be viewed at www.bwc.ohio.gov, a printout of which is also attached.  *See Mettke v. Hewlett Packard Co.*, No. 2:11-CV-00410, 2012 U.S. Dist. Lexis 49164 at *9 (S.D. Ohio Apr. 6, 2012) ("The court may take judicial notice of matters of public record from sources…whose accuracy cannot be reasonably questioned.")

3518067 .1

immunity, an individual may under certain circumstances be considered the employee of more than one employer qualifying for immunity." *Wolf v. Big Lots Stores*, No. 07AP-511, 2008 Ohio 1837, 2008 WL 1759073, at *2 (Ohio App. 10 Dist. April 17, 2008) (citing *Stanadyne, Inc. v. Indus. Comm.*, 12 Ohio St. 3d 199, 12 Ohio B. 264, 466 N.E.2d 171 (1984)); *Below v. Dollar General Corp.*, 163 Ohio App.3d 694, 2005 Ohio 4752 at ¶15, (Ohio App. 3d Dist. 2005). The question of whether a person is an employee for the purposes of workers' compensation immunity is determined by who had the right to control the manner or means of the person's work. *Below v. Dollar Gen. Corp.*, 163 Ohio App. 3d 694 at ¶15 (citing *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 524 N.E.2d 881, paragraph one of syllabus).

Mr. Lucio's First Amended Complaint details this alleged control by stating "on a regular and systemic and routine basis [Edw. C Levy Co.] actively participates in and controls the safety aspect of the work" performed by FMS employees. (First Amended Compl., ¶44.) Mr. Lucio then goes on to provide numerous examples of this alleged control:

    a. Defendant Levy Co. provides the safety rules and policies through the Edw. C. Levy Steel Mill Service safety manual [to be followed by Levy Environmental]; by setting forth the policy, means and methods to be used by Levy Environmental and its employees for inspecting, identifying, and controlling safety hazards to which said employees are exposed on a daily basis.

    b. More specifically Defendant Levy Co. dictated the fall protection rules and policies, means and methods to be followed through section 12 of the Edw. C. Levy safety manual including but not limited to:

        1. Use of guardrails

        2. 100% tie off for fall hazard of 6' or greater

    c. Defendant Levy Co. directed that all questions, concerns, and issues regarding working at heights, use of guardrails or of fall protection raised by Levy Environmental be directed to Defendant Levy Co. safety personnel including Rock Miller who is the certified competent safety persons for working at heights.

d.  Defendant Levy Co. requiring Levy Environmental Services Company management personnel, be trained in safety including fall protection by Defendant Levy Co. safety personnel including Malcolm Dunbar, Rock Miller and others so designated.

e.  Defendant Levy Co. required Levy Environmental Services management and employee personnel, including Plaintiff, Theodore Lucio, to be supervised in the area of safety including fall safety by Defendant Levy Co. safety personnel, including Malcolm Dunbar, Rock Miller and others so designated.

f.  Defendant Levy Co. directed Levy Environmental safety personnel to report to Defendant Levy Co. safety personnel who held themselves out as safety professionals, including, Malcom Dunbar, Rock Miller, and others so designated.

g.  By performing inspections on the equipment that they, Defendant Levy Co., designed including tower two and the subject screen deck which included the identification, elimination, and control of hazards including fall hazards such as the one Plaintiff Theodore Lucio was exposed to in this case.

h.  Defendant Levy Co. conducted at least annual "road show" safety "seminars" for Levy Environmental Safety personnel and employees, which included in part, the identification, elimination of, and control of hazards including fall hazards such as the one Plaintiff Theodore Lucio was exposed to in this case on the very equipment Defendant Levy Co. had designed.

i.  By Defendant Levy Co. setting forth and managing the policies, procedures, and equipment to be used to identify and eliminate or guard against fall hazards as set forth hereinabove including the requirement that 100% fall protection shall be provided for employees working near the edge of a building and/or platform or open shaft or any area that poses a fall of 6 feet or more.

(First Amended Compl. ¶44(a)-(i)).   The control, management, direct supervision and participation that Mr. Lucio alleges Edw. C Levy engaged in evidences the control required to establish a joint or co-employment relationship.   Mr. Lucio's claims are therefore barred R.C. 4123.74 and Ohio Const. Art. II, § 35.

### E.     Ms. Lucio's Loss of Consortium Claim Must Also Be Dismissed.

"[A] claim for loss of consortium is derivative in that the claim is dependent upon the defendant's having committed a legally cognizable tort upon the spouse who suffers bodily injury." *Bowen v. Kil-Kare, Inc.*, 63 Ohio St.3d 84, 93, 585 N.E.2d 384, 392 (Ohio 1992); see also *Headley v. Home Depot U.S.A., Inc.*, No. 5:13-cv-1839, 2014 U.S. Dist. LEXIS 92571, at *15 (N.D. Ohio July 8, 2014).  Because Mr. Lucio's primary claims against Edw. C. Levy Co. all fail, Ms. Lucio's loss of consortium claim under Count IV must also be dismissed.

### III.     CONCLUSION

For the reasons stated above, Edw. C. Levy Co. respectfully requests that the Court grant this Motion for Summary Judgment, and dismiss all of Mr. and Ms. Lucio's claims against it with prejudice.

EASTMAN & SMITH LTD.


   /s/ Stuart J. Goldberg
Stuart J. Goldberg (0029469)
Lynn Vuketich Luther (0075166)
One SeaGate, 24th Floor
P. O. Box 10032
Toledo, Ohio 43699-0032
Telephone:  (419) 241-6000
Fax:  (419) 247-1777
Email: sjgoldberg@eastmansmith.com
        lvluther@eastmansmith.com

Attorneys for Defendant
Edw. C. Levy Co.

## **PROOF OF SERVICE**

I hereby certify that on April 1, 2016, a copy of the foregoing was filed electronically with the Court.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

 /s/ Stuart J. Goldberg
Attorney for Defendant
Edw. C. Levy Co.

21