IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **THEODORE LUCIO, et al.,** | * | Case No. 3:15-cv-00613-JJH |
| Plaintiffs, | * | JUDGE JEFFREY J. HELMICK |
| v. | * | **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT** |
| **EDW. C. LEVY CO., et al.,** | * | **NORTH STAR BLUESCOPE STEEL, LLC'S MOTION FOR SUMMARY** |
| Defendants. | * | **JUDGMENT** |

Plaintiffs Theodore Lucio, et al., by and through counsel, respectfully enter their opposition to Defendant Levy Environmental Services Company's ("Levy") motion for summary judgment. The slag mill, it's operation, and the circumstances of Mr. Lucio's fall are outlined in Plaintiffs' opposition to his employer's (Levy Environmental Services Company') motion for summary judgment which was filed in Case No. 3:14-CV-01849 (Document No. 31). In the interest of judicial economy and in light of Local Rule 7.1(f), Plaintiff specifically incorporates that brief as if the same were filed in this case.

The legal relationships between Mr. Lucio, Edw. C. Levy Co., and North Star

BlueScope Steel, LLC and the corresponding duties that flowed between them are controlling in this case. Given the extensive degree of active negligence and active participation along with the reserved and actual control over critical safety variables in Mr. Lucio's workplace, both Edw. C. Levy Co. and North Star BlueScope Steel, LLC[1] owed and breached duties of care to Mr. Lucio on the facts of this case. For these reasons, Defendant North Star BlueScope Steel, LLC's motion should be denied.

The bases for this opposition are detailed in the accompanying Memorandum in Opposition.

        Respectfully submitted,

        **GALLON, TAKACS, BOISSONEUALT**
        **& SCHAFFER CO., L.P.A.**


        By:   /s/ Kevin J. Boissoneault
              Kevin J. Boissoneault
              Jonathan M. Ashton
              3516 Granite Circle
              Toledo, OH 43617
              (419) 843-2001
              (419) 841-2608 (FAX)
              kboisson@gallonlaw.com
              jashton@gallonlaw.com
              Attorneys for Plaintiffs

---

[1] Plaintiffs' opposition memorandum to Defendant Edw. C. Levy Co.'s motion for summary judgment has been filed separately. However, given the intertwined nature of the facts and legal relationships, a singular statement of facts has been utilized in both briefs. All arguments, authorities, and record evidence are specifically incorporated as against each Defendant including the Exhibit List filed with the Edw. C. Levy Co. opposition memorandum.

## MEMORANDUM IN OPPOSITION

### I. Statement of Facts

Plaintiffs' claims against both Edw. C. Levy Co. and North Star BlueScope Steel, LLC sound in negligence and are grounded in the separate duties owed by each Defendant to Mr. Lucio. There is no dispute that Plaintiff Theodore Lucio suffered severe and permanent injuries when he fell approximately twenty-five feet from an unguarded screen deck on a slag mill tower on February 25, 2013.[2] There is also no dispute that Mr. Lucio's employer was an entity called Fulton Mill Service.[3]

#### A. The Parties and The Contracts

Edw. C. Levy Co. is a corporate entity separate and apart from Fulton Mill Service and is, on its own, a separate employer.[4] The relationship between Edw. C. Levy Co. and Mr. Lucio was contractor/sub-contractor, not employer/employee. Mr. Lucio's claims against Edw. C. Levy Co. are two-fold: (1) Edw. C. Levy Co.'s active negligence; and (2) Edw. C. Levy Co.'s negligent participation in Mr. Lucio's safety activities as well as its negligent failure to exercise the control it retained over critical safety variables in Mr. Lucio's workplace.

The distinction between the active negligence theory and the active participation/ critical variable retention theory is important. The controlling authority on the latter premise pre-supposes a level of involvement between a contractor and a sub-contractor such that the

---

[2] A discussion of the slag mill, its components, and its operation are discussed in detail in Mr. Lucio's previously-filed opposition memorandum to Levy Environmental Services Company's motion for summary judgment in Case No. 3:14-CV-01849. That brief is specifically incorporated by reference in this brief as if it were submitted in this matter.

[3] Edw. C. Levy Motion for Summary Judgment, p. 2. Fulton Mill Service is a d/b/a for Levy Environmental Services Company and was the subject of the concurrent case: 3:14-CV-01849.

[4] As noted by Edw. C. Levy at p. 17, the company is a distinct employer for Ohio Workers' Compensation purposes.

level of participation on the part of the contractor (or the retention of control over critical variables in the sub-contractors workplace) creates a duty of care where otherwise such a duty would not exist. Active negligence, on the other hand, arises from the breach of an independent duty; a duty which exists regardless of the degree of participation or control. Here, the roots for Edw. C. Levy's active negligence were sowed in a document called: "*Performance and Payment Guarantee*".[5]

Edw. C. Levy Co. submitted an affidavit signed by Robert Scholz in his capacity as CFO for Edw. C. Levy Co. Mr. Scholz attached two *Slag Handling and Mill Services Agreements*[6], a document called *Slag Handling and Mill Services Contract Specifications*, and a *Performance and Payment Guaranty*. The two slag-handling contracts and the related specifications were agreements between North Star BlueScope Steel, LLC and Fulton Mill Services. Edw. C. Levy Co. and North Star BlueScope Steel, LLC signed the *Performance and Payment Guarantee*. The upshot of these documents is that Fulton Mill Service would run the slag mill on the North Star BlueScope Steel, LLC property. Separate from the agreement, Edw. C. Levy Co. guaranteed the performance of Fulton Mill Service.

The performance guarantee is important. North Star BlueScope Steel, LLC required Edw. C. Levy to guarantee Fulton Mill Services' obligations under the *Slag Handling and Mill Services Agreement* as a precondition to entering into the relationship. To that end, Edw. C. Levy Co. specifically guaranteed "the complete performance of all of the obligations of FMS…to (a) provide the slag handling and mill services."[7] Fulton Mill Service's obligations under the *First Amended and Restated Slag Handling and Mill*

---

[5] Affidavit of Robert Scholz, Exhibit C.
[6] The original and first amended agreements
[7] Scholz Affidavit, Exhibit C, Paragraph 3, 3(a)

*Services Agreement*[8] included, *inter alia*:

    (f) Comply with all applicable municipal, state and federal law and regulations, including, without limitation, all environmental laws, orders, rules and regulations in the performance of its services under this Agreement;

    \*                        \*                        \*

    (i) Maintain the Slag Plant Site in a clean and safe condition reasonably satisfactory to NSBS.
    (j) Maintain its operations in accordance with such operating rules, regulations and procedures as NSBS may reasonably require (including pre-employment drug screening and follow-up random drug testing)

Under the plain terms of both the *Performance and Payment Guaranty* and the *First Amended and Restated Slag Handling and Mill Services Agreement*, Defendant Edw. C. Levy Co. assumed contractual compliance and safety requirements—obligations intended to benefit Levy Environmental Service Company's employees like Mr. Lucio.

The document called *Slag Handling and Mill Services Contract Specifications*[9] makes this point inarguable. First, it states:

> It is the goal of the management of North Star-BHP Steel to operate a site where there are no lost time injuries to any personnel associated with the operation, nor does the operation cause longer term deterioration in personnel health. We will expect the successful contractor to share this goal and implement operating philosophies and practices in line with this goal.
>
> All safety standards must minimally conform to the Federal Occupational Health and Safety Requirements (29 C.F.R.) see also Commercial Conditions of contract (pages 23-28).
>
> The contractor is to submit a draft safety plan with the tender to show how site safety will be managed. This plan is to cover policy, site access control, equipment, personnel induction and training, auditing, hazard management, emergency response plans and employee parking and vehicular access.

---

[8] Mr. Scholz relied on this agreement as authoritative and it is attached to his affidavit as Exhibit B. The excerpts are taken from page 5, Section 3: Obligations of FMS. Northstar BlueScope Steel, LLC submitted the Affidavit of Joe Budion which relied on this agreement as all.
[9] Scholz Affidavit, Exhibit D

> The contractor is to submit with the tender safety statistics from other similar operations showing Lost Time Injury frequency rates, OSHA Reportable Injury frequency rates and [illegible] Injury frequency rates.
>
> A written housekeeping program will be required to be in place and to be reviewed on a regular basis. Employees responsibilities are to be assigned, improvements are to be made in the housekeeping program when deficiencies are noted by the owner or the contractor.[10]

Later, the *Slag Handling and Mill Services Contract Specifications* document again states compliance with the Occupational Safety and Health Act is required and Edw. C. Levy Co. (as guarantor of Fulton Mill Services' obligations) is required to obtain written approval from North Star BlueScope Steel, LLC in order to subcontract or assign any part of the work covered by the specifications.

### B. The Active Participation of Edw. C. Levy Co.

Mr. Lucio's claim concerns Edw. C. Levy Co.'s active participation in—and retention of control over—the critical safety variables at the slag mill.[11] The First Amended Complaint outlines Mr. Lucio's claims against Edw. C. Levy Co. and North Star BlueScope Steel, LLC as separate and distinct from the intentional tort claim against his employer, Levy Environmental Service Company d/b/a Fulton Mill Service.[12] Edw. C. Levy Co. promulgated all safety rules and conducted regular training—it was no "third party safety consultant". The record contains numerous instances of Edw. C. Levy Co.'s active participation and control over workplace safety.

Edw. C. Levy Co. Vice President of Corporate Safety Malcolm Dunbar provided safety training to other executives within the organization who would, in turn, provide

---

[10] Exhibit D: *Slag Handling and Mill Services Contract Specifications*, pp. 2-3
[11] First Amended Complaint
[12] The related but separate Case No. 3:14-CV-01849 addressed the employer's potential liability.

training to the employees various steel mill services companies under the Edw. C. Levy Co. umbrella—such as the Fulton Mill Service Location in Delta, OH.[13] Mr. Dunbar himself made annual safety presentations at the facility in Delta.[14] Mr. Dunbar identified several Edw. C. Levy Co. safety documents and policies signed by Mr. Lucio. Mr. Dunbar agreed that the Edw. C. Levy Co. safety documents and policies governed the practices at the Delta facility.[15] Greg Lambert, Operations Manager for Fulton Mill, similarly testified that safety training came from Edw. C. Levy Co. employees such as Mr. Dunbar, Rock Miller, or Nicole Platt.[16] Fulton Mill Service personnel reported safety issues directly to Edw. C. Levy Co., according to Mr. Dunbar and Mr. Miller. Edw. C. Levy Co. performed annual inspections of the slag mill and never identified or repaired the obvious fall hazards that they created when they designed and built the slag mill.

Edw. C. Levy Co. produced multiple corporate safety documents in Case No. 3:14-CV-01849. Those documents—several of which were discussed in Mr. Dunbar's deposition—clearly spell out the Edw. C. Levy fall protection policies. These documents[17], which are made part of the record in the attached exhibit list, include:

- Edw. C. Levy Co. Steel Mill Services
  Fall Protection
  Standard 29 CFR 1926.501
  Section 12
  Revised 7/2010

---

[13] Deposition of Malcolm Dunbar, beginning at p. 4. Mr. Dunbar's deposition and accompanying exhibits have been filed.
[14] Dunbar Deposition, pp. 9-10
[15] Dunbar Deposition, pp. 20-21
[16] Deposition of Greg Lambert, pp. 41-42. Mr. Lambert's deposition has been filed by Defendant North Star BlueScope Steel. Mr. Miller's deposition has been filed. Mr. Miller's deposition is instructive regarding the different corporate entities which operated slag mills separate and apart from Edw. C. Levy Co.; e.g., beginning at p. 10
[17] Composite Exhibit 3: Wherever possible, when these documents are referenced in this brief actual excerpts are used and bates stamp numbers are provided.

- Fall Protection Outline from Dec. 2012

- Levy Mill Services Cardinal Rules (Rule 5)

- Safety Meeting Minutes 12/11/10

- Sections 13.1 – 13.3 from the Internal Policy & Procedures Manual titled: Fall Protection

- Job Breakdown Safety Analysis (JBSA) for changing screens

The corporate safety documents—which cite to and align with governmental and industry safety regulations—establish Edw. C. Levy Co.'s recognition of the hazards, risks, and dangers associated with working at height and acknowledge the serious and deadly injuries that result from a lack of appropriate protection[18].

Some highlights from those documents include:

## Levy Steel Mill Services Cardinal Rules
Failure to follow these rules may lead to discipline up to and including discharge

5. Employees must utilize fall protection when working at unprotected heights above four (4) feet. If continuous positioning is required while working at unprotected heights, continuous tie-off must also be maintained. The following tasks do not require fall protection: walking or working on ladders, vehicles or trailers on which employees must be located in order to perform their duties. . If you are not certain of the specific requirement for any task, contact your supervisor for direction.

The Edw. C. Levy Co. Fall Protection manual unequivocally states:

> One hundred percent (100%) fall protection will be provided for all employees who are working near the edge of a building, a platform, and open shaft, or any areas that poses a possibility of falling six feet or more. Only equipment that meets ANSI standards shall be used.

Here is the larger passage from the original document:

---

[18] The same evidence established knowledge on the part of Mr. Lucio's employer, Levy Environmental Services, Inc.

> **Section 12 Fall Protection**
> SCOPE AND PURPOSE
>
> It is the policy of EDW. C. LEVY CO. STEEL Mill Service to permit only employees trained in fall protection procedures to work in areas where fall hazards exist; to reduce the likelihood of fall accidents and to help ensure a safe work environment. Currently, all questions relative to working at heights will be directed to Mr. Rock Miller, Safety, Steel Mill Services. Mr. Miller is a certified "Competent Person for Working at Heights"
>
> 12.1  GENERAL PROCEDURES
>
> A thorough understanding of the fall hazards in your workplace is the first step in fall prevention. Once potential fall hazards are identified, steps to eliminate or control them will occur. Engineering methods, including guardrails or scaffolds, are to be used first. If engineering controls are not possible, personal fall protection will be used. Levels of six (6) feet or higher require fall protection.
>
> One hundred percent (100%) fall protection will be provided for all employees who are working near the edge of a building, a platform, an open shaft, or any area that poses a possibility of falling six feet or more. Only equipment that meets ANSI standards shall be used.
>
> Floor openings will be planked over or barricaded and slab edges of an open building will be protected by standard railing and toe boards. These protective barriers will be maintained and will not be disturbed or removed except as directed by a supervisor. If temporary removal is required, persons who remove these barriers will be responsible for their replacement as soon as circumstances permit.
>
> In the event an employ falls or some other related, serious incident occurs, a prompt rescue will be deployed if the employee is unable to rescue themselves and a investigation shall be conducted to examine the circumstances of the incident to determine if the fall protection plan needs to be changed (e.g. new practices, procedures, or training) and shall implement those changes to prevent similar types of falls or incidents.

The record further contains safety handouts and a quiz, successfully completed by Mr. Lucio, regarding the necessity of proper fall protection.

Defendant Edw. C. Levy Co. created and promulgated the site safety rules for the slag mill run by Fulton Mill Service/Levy Environmental Services Company. The evidence further shows—and Judge Carr observed the same in Case No. 3:14-CV-01849—that

9

neither Edw. C. Levy Co. nor Mr. Lucio's employer enforced those rules.

Defendant Edw. C. Levy Co.'s legal duty to enforce its safety rules on the job site comes from two separate and distinct sources: the contracts and its own active participation in the safety training and failed enforcement of safety rules at the training site.[19] Importantly, and contrary to assertions made by Edw. C. Levy Co.'s, OSHA regulations apply to Edw. C. Levy Co.'s failures at the Delta site for two reasons: (1) the contracts, contract specifications, and performance/payment guaranty all specifically require such compliance of both Fulton Mill Service and Edw. C. Levy; and (2) the OSHA regulations themselves contemplate multiple "employers" in terms of responsibility.[20] While Edw. C. Levy Co. was not involved in all aspects of the day-to-day operation of the slag mill, it could not have been more actively involved in the regular safety deficiencies encountered by Mr. Lucio and his co-workers.

Not only did Edw. C. Levy Co. create and promulgate site-specific fall protection programs—it designed and constructed the slag mill and towers. Brij Sapru, the Edw. C. Levy Co. engineer who designed the slag mill[21], testified: (1) he knew the screen on the deck of Tower 2 would need to be changed depending on the size of the product; (2) he agreed and knew that the design did not have a proper ladder to access the screen deck on

---

[19] Please see Exhibit 1: Affidavit, CV, and Report of Michael C. Wright as well as Mr. Wright's deposition transcript which has been filed with this brief and which are part of the summary judgment record. Mr. Wright, a professional engineer with more than 35 years of experience in industrial and plant safety engaged in a full analysis of the foregoing depositions, contracts, as well as industry and governmental standards applicable to both Edw. C. Levy Co. and North Star BlueScope Steel which goes beyond the constraints of Local Rule 7.1(f). Certain passages from his report will be excerpted in this memorandum.

[20] This point is not to be conflated with a common law employer/employee relationship or the concept of "employment" for purposes of the Ohio Workers' Compensation Act. Indeed, Edw. C. Levy Co. admitted in discovery that Mr. Lucio was employed by Levy Environmental Services Company, not Edw. C. Levy Co. as the attached interrogatory answer shows.

[21] The slag mill was built by Wayne Engineering Company, a d/b/a of Edw. C. Levy Co.

Tower 2; (3) that the screen deck on Tower 2 was sloped away from the slag mill; and (4) he agreed he did not provide required fall protection safeguards in the design.[22]

### C. North Star BlueScope Steel, LLC Retained Control Over Critical Safety Variables at the Slag Mill Site.

Jeffrey Joldrichsen, Vice President of Operations at North Star BlueScope Steel, LLC prior to the incident, testified that he dealt with Edw. C. Levy Co. Vice President of Steel Mill Services, Brian Lasley from time to time regarding the slag mill.[23] Malcolm Dunbar testified that he provided safety training to Mr. Lasley through Edw. C. Levy Co.[24] Mr. Joldrichsen testified that North Star BlueScope Steel, LLC held monthly meetings to ensure safety compliance with the contractor requirements spelled out in the governing contracts such as OSHA, ANSI, International Building Codes, the Ohio Revised Code, and the Ohio Administrative Code.[25] North Star BlueScope Steel, LLC did not perform safety inspections, according to Mr. Joldrichsen, and did not enforce safety compliance on Tower 2.[26]

The *First Amended and Restated Slag Handling and Mill Services Agreement* and the *Slag Handling and Mill Services Contract Specifications* clearly reserve the right to ensure safety compliance to North Star BlueScope Steel, LLC and the evidence shows that such reservation was negligently exercised.[27] Mr. Lucio has been deposed twice in this

---

[22] Deposition of Brij Sapru, pp. 19, 21, 23, 44, 27, 31-33. Mr. Sapru's deposition has been filed by Defendant Edw. C. Levy Co. Mr. Wright's discussion of the design, beginning at p. 22 of his report, is also instructive on this point.
[23] Deposition of Jeffrey Joldrichsen, pp. 7-8, 14. Mr. Joldrichsen's deposition has been filed by Defendant Edw. C. Levy Co..
[24] Dunbar Depo, pp. 6-8, 22
[25] Joldrichsen Depo, pp. 23-26
[26] Joldrichsen Depo, pp. 28, 35
[27] Please see Mr. Wright's report, beginning at p. 28

matter—once in Case No. 3:14-CV-01849 and once in the above-captioned case.[28] Upon questioning from counsel for North Star BlueScope Steel, LLC he testified North Star BlueScope Steel, LLC conducted minimal, initial safety training.[29] When asked about seeing North Star BlueScope Steel, LLC personnel, Mr. Lucio testified that he "constantly" saw safety trucks driving around the grounds of the facility.[30] He went on to discuss how North Star BlueScope Steel, LLC personnel enforced a no-smoking safety policy he learned about in a meeting from North Star BlueScope Steel, LLC and that steel mill personnel attended safety meetings.[31] The selective enforcement of one safety policy—smoking as a fire/explosion hazard—and not others—the obvious noncompliance of Tower 2 with required safety rules and regulations—is evidence of negligence.

## LAW AND ARGUMENT

### I. Standard of Review

The standard of review applicable to motions for summary judgment is established by F.R.C.P. 56(c) and the associated case law. Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." F.R.C.P. 56(c).

Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be

---

[28] Both deposition transcripts have been filed by Defendant Edw. C. Levy Co.
[29] Lucio 2/19/2016 Depo, pp. 6-8
[30] Lucio 2/19/2016 Depo, p. 14
[31] Lucio 2/19/2016 Depo, pp. 16-18

resolved in favor of either party." Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir.1992)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)). Thus, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 250 (quoting F.C.R.P. 56(e)).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.,* 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. *Anderson,* 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affiants are more

credible. 10A Wright & Miller, *Federal Practice and Procedure,* § 2726. Rather, credibility determinations must be left to the fact-finder. *Id*.

## II. Defendant North Star BlueScope Steel, LLC's Duties of Care

### A. Common Law

In *Wellman v. E. Gas Co.* (1953), 160 Ohio St. 103, paragraph one of the syllabus, the Ohio Supreme Court held:

> Where an independent contractor undertakes to do work for another in the very doing of which there are elements of real or potential danger and one of such contractor's employees is injured as an incident to the performance of the work, no liability for such injury ordinarily attaches to the one who engaged the services of the independent contractor.

In other words, when an employee of a subcontractor is injured while performing work for his or her employer that is inherently dangerous, the owner and/or general contractor owes no duty of care to that employee. *Sopkovich v. Ohio Edison Co.* (1998), 81 Ohio St. 3d 628, 636-637, quoting *Wellman*, at paragraphs one and two of the syllabus.

Nonetheless, an exception exists to the general rule of "no duty" should the Court find Mr. Lucio's work to have been "inherently dangerous". The exception occurs when the owner and/or general contractor or, in this case, project manager, actively participates in the subcontractor's job operations by either (1) directing or exercising "control over the work activities of the independent contractor's employees;" or (2) retaining or exercising control over a critical variable in the workplace." *Sopkovich* at 642-643.

In its summary judgment brief, Defendant North Star BlueScope Steel, LLC referenced Mr. Lucio's alleged knowledge that "a degree of danger surrounded the

performance of the changing of screens on Tower 2."[32] Any danger which existed, of course, existed because the screen deck on Tower 2 did not comply with governmental or industrial safety regulations, not because changing screens is "inherently dangerous".

Michael Wright's report and deposition testimony are important in terms of Defendant North Star BlueScope Steel, LLC's liability in this matter. Beginning with Section D at p. 28 of his report, Mr. Wright outlined the agreements between the parties as well as North Star BlueScope Steel, LLC's involvement in site safety and related obligations. In his deposition, beginning at p. 143, Mr. Wright described the "selective" and inconsistent involvement on the part of North Star BlueScope Steel, LLC including the failure to ensure compliance with OSHA (a contract requirement) and, critically, North Star BlueScope Steel, LLC's ability to suspend Fulton Mill Service employees for safety violations.[33] Mr. Wright further discussed the relevance of enforcing the smoking policy to North Star BlueScope Steel, LLC's inconsistent enforcement: "When they started doing enforcement and inspections with the smoking example. OSHA requires nobody work at heights above six feet. They saw people working at heights."[34]

The evidence shows that not only did North Star BlueScope Steel, LLC retain control over site safety—it selectively and inconsistently enforced applicable safety rules. Under the controlling authority, this level of involvement creates a duty of care rendering North Star BlueScope Steel, LLC's motion for summary judgment inapposite to the law.

**B. Contractual**

North Star BlueScope Steel, LLC is signatory to both the *First Amended and*

---

[32] NSBS, LLC motion, p. 12
[33] Deposition of Michael Wright, pp. 143-155
[34] Wright Deposition, pp. 150-151

*Restated Slag Handling and Mill Services Agreement* as well as the *Slag Handling and Mill Services Contract Specifications* document which call out long term "personnel health" as a key safety concern and material term of the agreement. Ohio contract law regarding intended third-party beneficiaries as well as the common law analysis of foreseeability supports a duty of care on the part of North Star BlueScope Steel, LLC.

Ohio has adopted Section 302 of the Restatement of the Law 2d, Contracts (1981) 439-40. Hill v. Sonitrol of Southwestern Ohio, Inc. (1988), 36 Ohio St. 3d 36, 40, 521 N.E.2d 780. The Restatement states in pertinent part: Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and ******(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance. *Hill*, 36 Ohio St. 3d at 40, quoting Restatement of the Law 2d, Contracts (1981) 439-40, Section 302. There must be evidence to prove that the promisee intended to directly benefit the third party, which results in the promisee assuming a duty toward the third party. Stoll v. Hostetler, 1995 Ohio App. LEXIS 137 (Jan. 18, 1995) Wayne App. No. 2891, unreported, at 4, citing TRINOVA Corp. v. Pilkington Bros., P.L.C. (1994), 70 Ohio St. 3d 271, 278, 638 N.E.2d 572. The court noted that "performance of a contract will often benefit a third person[,] but unless the third person is an intended beneficiary *** no duty to him is created." *Hill*, 36 Ohio St. 3d at 40.

Under the controlling documents in this case, North Star BlueScope Steel, LLC specifically called out "personnel health" as a material contract term part of its guaranty of Fulton Mill Services' obligations. Mr. Lucio, as Fulton Mill Service personnel, falls within

16

the class of intended beneficiaries. Coupled with Edw. C. Lecy Co.'s knowledge—from designing the structure to reserving all safety responsibility—Mr. Lucio's incident was entirely foreseeable.

It is rudimentary that in order to establish actionable negligence, one must show the existence of a duty, a breach of the duty, and an injury resulting proximately therefrom. Di Gildo v. Caponi (1969), 18 Ohio St.2d 125; Feldman v. Howard (1967), 10 Ohio St.2d 189. The existence of a duty depends on the foreseeability of the injury. Ford Motor Co. v. Tomlinson (C.A. 6, 1956), 229 F. 2d 873; Gedeon v. East Ohio Gas Co. (1934), 128 Ohio St. 335. The test for foreseeability is whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act. Freeman v. United States (C.A. 6, 1975), 509 F. 2d 626; Thompson v. Ohio Fuel Gas Co. (1967), 9 Ohio St. 2d 116; Mudrich v. Standard Oil Co. (1950), 153 Ohio St. 31; Menifee v. Ohio Welding Products, Inc. (1984), 15 Ohio St. 3d 75, 77.

Here, between the specific mention of "personnel safety" and the entirely foreseeable nature of Mr. Lucio's incident coupled with North Star BlueScope Steel, LLC's site safety responsibilities, North Star BlueScope Steel, LLC owed Mr. Lucio a duty of care.

### III. Conclusion

Based on the foregoing, in addition to the record evidence, Mr. Lucio's summary judgment opposition brief from Case No. 3:14-CV-01849 (Document No. 31), discovery documents, and Mr. Wright's report and deposition testimony, Plaintiffs pray that Defendant North Star BlueScope Steel LLC's motion for summary judgment be denied and all claims from their First Amended Complaint proceed to trial.

Respectfully submitted,

**GALLON, TAKACS, BOISSONEUALT & SCHAFFER CO., L.P.A.**

By: /s/ Kevin J. Boissoneault
    Kevin J. Boissoneault
    Jonathan M. Ashton
    3516 Granite Circle
    Toledo, OH 43617
    (419) 843-2001
    (419) 841-2608 (FAX)
    kboisson@gallonlaw.com
    jashton@gallonlaw.com
    Attorneys for Plaintiffs

## CERTIFICATION OF FILING

I hereby certify that on this 26th day of April, 2016, a copy of the foregoing *Plaintiffs' Opposition to Defendant North Star Bluescope Steel LLC's Motion for Summary Judgment* was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

By: /s/ Kevin J. Boissoneault
    Kevin J. Boissoneault
    Jonathan M. Ashton