IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Theodore Lucio, et al. : | |
| : | Case No. 3:15-cv-00613-JJH |
| Plaintiffs, : | |
| : | JUDGE JEFFREY J. HELMICK |
| v. : | |
| : | |
| Edw. C. Levy Co., et al., : | |
| : | |
| Defendants. : | |

**DEFENDANT NORTH STAR BLUESCOPE STEEL, LLC'S REPLY
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Theodore and Stephanie Lucio ("Plaintiffs") fail to establish a genuine issue of material fact exists as to their claims for premises liability and loss of consortium in response to Defendant North Star BlueScope Steel, LLC's ("North Star BlueScope") Motion for Summary Judgment. In their Memorandum in Opposition, Plaintiffs fail to put forth any evidence to establish there is a triable issue of fact as to North Star BlueScope's liability. The undisputed facts show that North Star BlueScope did not control or direct Mr. Lucio's work activities, did not actively participate in the operation of his job, and did not exercise control over a critical variable in Mr. Lucio's work area; facts necessary to establish a claim for negligence against a property owner under Ohio law. Based on the evidence presented, reasonable minds could only conclude that North Star BlueScope owed no duty of care to Mr. Lucio. Because Plaintiffs have failed to present any evidence of disputed facts to satisfy their burden in opposing North Star

BlueScope's motion, North Star BlueScope is entitled to summary judgment on Plaintiffs' claims for premises liability and loss of consortium.

## ARGUMENT

Summary judgment is appropriate in this case because Plaintiffs have not met their burden under Civ. R. 56(E). "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party." Civ.R. 56(E).

Here, Plaintiffs fail to present any evidence to establish a triable issue of material fact to defeat North Star BlueScope's Motion for Summary Judgment. Specifically, Plaintiffs offered no evidence to dispute the material facts in this case that: (1) Mr. Lucio was injured while performing an inherently dangerous activity, and (2) North Star BlueScope did not control or direct work activities of Mr. Lucio; did not actively participate in the operation of the FMS Slag Plant Site that lead to Mr. Lucio's injury; nor exercised control over a critical variable in the work area.

The issue before the Court is whether North Star BlueScope is liable to Plaintiffs under a claim of premises liability. Plaintiffs' Memorandum in Opposition attempts to divert the Court's attention away from the issue by arguing alternative negligence theories to establish a duty of care on part of North Star BlueScope. The issue before the Court is limited to whether Plaintiffs can satisfy the exception carved out under Ohio law for inherently dangerous activities in order to overcome the "nonliability" rule applicable to property owners. Plaintiffs have failed to present any evidence or argument demonstrating that there is a genuine issue for trial in this case. Accordingly, North Star BlueScope is entitled to summary judgment.

## I. North Star BlueScope is Entitled to Summary Judgment Because Plaintiffs Failed to Establish a Genuine Issue of Fact that North Star BlueScope Directed, Controlled, or Actively Participated in the Operation of Mr. Lucio's Activities or Worksite.

The parties agree on the applicable legal standard in this case. In Defendant's Motion and Plaintiffs' Memorandum in Opposition, both parties describe the general rule of nonliability as set out in *Wellman v. E. Gas Co.* 160 Ohio St. 103, 113 N.E.2d (1953). Under the *Wellman* standard, a property owner does not owe a duty of care to the employee of an independent contractor that is injured while performing an inherently dangerous activity. *Id; see also Sopkovich v. Ohio Edison Co.*, 81 Ohio St.3d 628, 693 N.E.2d 233 (1998). The parties also agree that under Ohio law, there is an exception to this general rule of "nonliability" that arises when the "owner and/or general contractor * * * actively participates in the subcontractor's job operations by either (1) directing or exercising 'control over the work activities of the independent contractor's employees;' or (2) retaining or exercising control over a critical variable in the workplace." (Plaintiffs' Memorandum in Opposition to Defendant North Star BlueScope Steel, LLC's Motion for Summary Judgment at p. 14, hereinafter "Memo in Opp," citing *Sopkovich* at 642-643.) Plaintiffs fail to establish a triable issue as to any material facts in support of the exception to the applicable rule of nonliability. Accordingly, summary judgment is appropriate.

### A. It is Undisputed that the Work Performed by Mr. Lucio was Inherently Dangerous.

It is indisputable that the work performed by Mr. Lucio that led to the accident at issue is inherently dangerous. In their Memorandum in Opposition, Plaintiffs summarily state that the task of changing the screens on the slag mill tower is not inherently dangerous. They go so far as to argue that "[a]ny danger which existed, of course, existed because the screen deck on Tower 2 did not comply with governmental or industrial safety regulations, not because changing screens is 'inherently dangerous.'" (Memo in Opp at p. 15.) However, Plaintiffs' argument is flawed in

two ways. First, Ohio law has routinely held that an activity is considered inherently dangerous when it involves a prior recognizable risk of physical harm to others which is inherent in the work itself. *Tipton v. Bernie's Electric Sales & Service, Inc.*, 2004-Ohio-5249, 2004 Ohio App. LEXIS 4812 (Ohio 6th Dist. 2004). Here, the risk of slipping or falling was clearly a recognizable one since Plaintiffs concede that Fulton Mill Service ("FMS") trained its employees on fall protection and provided them with safety equipment. (Memo in Opp at pp. 8-9.) Plaintiffs even assert in their Memorandum in Opposition that Mr. Lucio's injury was "entirely foreseeable," which further supports the fact that Mr. Lucio recognized the risk of physical harm associated with changing the screens. (Memo in Opp at p. 17.) Moreover, Mr. Lucio himself was aware of the risk of losing his balance and slipping while changing screens on Tower 2. (Luci Dep. 2, pp. 38-39.) As stated in North Star BlueScope's Motion, the work of changing the metal screens was performed in a hopper 25 feet above ground and required the individual performing the work to wear a fall protection gear while in the hopper. (Motion, p. 12.) The recognizable risk of physical harm associated with this activity is undisputed.

Further, Plaintiffs have provided no evidence that the task of changing the metal screens on Tower 2 was in a secured area and had protection from slips, trips and falls. In fact, Plaintiffs have attested that the only access to the screen deck is to climb up the side, exposing the worker to a fall hazard, and that the screen deck has no guard rail, only 28 or 29 inches of rubber skirting designed to keep the slag in the hopper. Additionally, the screen deck is sloped toward the unguarded edge at approximately 30-40 degrees.[1] Indeed, the facts leave no question that Mr. Lucio knew of the risk of physical harm associated with this activity and continued with the activity despite the risk on the day of the accident.

Second, Plaintiffs have provided no evidence to dispute that the task of changing the screens is inherently dangerous under Ohio law and their Memorandum in Opposition is void of

---

[1] Plaintiffs' Memorandum in Opposition to Defendant Levy Environmental Services Company's Motion for Summary Judgment, p. 5, 3:14-cv-01849 (Doc. 31).

4

any legal authority that would support such a conclusion. Instead, Plaintiffs simply ignore Ohio's established precedent on the issue and make a general, unsupported statement that changing the screens on Tower 2 (25 feet off the ground in an unguarded hopper) is not inherently dangerous. Plaintiffs have failed to identify any facts and present any evidence or legal authority to support its assertion that a triable issue exists as to the inherent danger of Mr. Lucio's work of changing the screens on Tower 2.

### B. Plaintiffs Failed to Provide any Evidence that Satisfies the Exception to the General Rule of Nonliability Applied to Property Owners.

There is no triable issue of fact in this case as to Plaintiffs' claims against North Star BlueScope. Plaintiffs have presented no facts that dispute the evidence that North Star BlueScope **did not** direct or exercise control over the work activities of Mr. Lucio, **did not** actively participate in the operation of Mr. Lucio's job, and **did not** retain or exercise control over a critical variable in his workplace. Instead, Plaintiffs rely upon the argument that North Star BlueScope retained *contractual* control over FMS's slag plant and the activities of FMS's employees working at the slag plant. (Memo in Opp at pp. 11, 15-17.) However, under Ohio law, "contractual control" is not "active participation" or the level of "actual control" necessary to satisfy the exception and overcome a property owner's presumption of nonliability. *See Cafferkey v. Turner Constr. Co.*, 21 Ohio St.3d 110, 488 N.E.2d 189 (1986); *Bond v. Howard Corp.*, 72 Ohio St.3d 332, 650 N.E.2d 416 (1995). Notably, Plaintiffs do not cite a single case in support of their position that North Star BlueScope's alleged "contractual control" establishes a triable issue of the nonliability exception under Ohio law.

Plaintiffs also contend that North Star BlueScope exercised "selective and inconsistent involvement" in safety and related obligations at FMS's slag plant. (Memo in Opp at p. 15.) The examples of "selective involvement" provided by Plaintiffs include North Star BlueScope's failure to ensure FMS's compliance with OSHA regulations, its "ability to suspend Fulton Mill

Service employees for safety violations," and its alleged enforcement of the smoking policy. (Memo in Opp at p. 15.) None of these examples, however, demonstrate <u>active participation</u> or <u>control</u> exercised by North Star BlueScope as applied by Ohio courts. Contrary to Plaintiffs' argument, Ohio courts have determined that a property owner's violation of OSHA regulations does not demonstrate actual control or active participation. *Wyczalek v. Rowe Constr. Servs. Co., Inc.,* 148 Ohio App. 3d 328, 2001-Ohio-3104, 773 N.E.2d 560. In *Wyczalek,* the court affirmed summary judgment for a property owner even though the deceased worker's employer was cited by OSHA for safety violations as a result of the fall. (*Id.* at ¶¶ 45-46.) The court noted that the property owner did not direct critical acts that led to the fall or control or give permission for the acts. (*Id.*)

North Star BlueScope's contractual right to enforce a smoking policy or to suspend work also does not meet the standard of <u>actual control</u> under Ohio law. Plaintiffs' Memorandum in Opposition fails to address or distinguish any of the controlling authority cited in North Star BlueScope's Motion that establishes the activities deemed to be "actual participation" or "control" by a property owner. The Supreme Court's decision in *Cafferkey v. Turner* specifically rejects Plaintiffs' examples of "selective involvement." *See Cafferkey,* 21 Ohio St.3d 110 (1986). In reaching its holding, the *Cafferkey* court considered a general contractor's actual participation in the work **rather than its capacity to supervise and control the subcontractor's employees.** *Cafferkey* at syllabus. (Emphasis added.) "The various contractual rights reserved by [the general contractor does] not empower [the general contractor] to control the means and manner of [the subcontractor's] performance. *Id.* at 113. Similarly, in this case, any contractual rights retained by North Star BlueScope to take remedial action for FMS's failure to comply with safety requirements do not establish actual participation by North Star BlueScope in the workplace (FMS Slag Plant) or over the actions of Mr. Lucio. Plaintiffs simply ignore Ohio law and contend, without any basis, that North Star BlueScope

6

owed a duty of care to Mr. Lucio based upon certain contractual rights under its agreement with FMS.

In addition to failing to cite any supporting case law, Plaintiffs' Memorandum in Opposition misstates the testimony of Jeffrey Joldrichsen in an attempt to bolster their argument. Plaintiffs assert that Mr. Joldrichsen's testimony demonstrates that North Star BlueScope exercised control over critical safety variables at the slag plant. (Memo in Opp at p. 11.) Specifically, Plaintiffs assert that "Mr. Joldrichsen testified that North Star BlueScope Steel, LLC held monthly meetings to ensure safety compliance with the contractor requirements spelled out in the governing contracts such as OSHA, ANSI, International Building Codes, the Ohio Revised Code, and the Ohio Administrative Code." (*Id.* citing Joldrichsen Depo, pp. 23-26.) A review of Mr. Joldrichsen's testimony confirms that Plaintiffs have inaccurately summarized the testimony and applied their own favorable interpretation in order to support their arguments. Indeed, Mr. Joldrichsen's testimony reads, in relevant part:

> Q   * * * What does "supplier review" mean?
>
> A   Supplier review means that Fulton Mill is a contractor with North Star BlueScope. We have supplier review meetings with other contractors, and this is just a process that we go through with some of those other contractors, including Fulton Mill.
>
> Q   And is this Safety and Environment Review something that's done every month?
>
> A   Correct.
>
> Q   Who chairs that part of the meeting?
>
> A   So Fulton Mill puts this together and presents it to North Star BlueScope.
>     * * *
>
> Q   Why do they do that?
>
> A   Because we ask them to give us an update of what they're doing out in their facility and how they're handling the contract.

(Joldrichsen Depo. pp. 21-22.)

| | | |
|---|---|---|
| | Q | And tell me all of the steps that North Star BlueScope takes to ensure compliance with the contractor requirements related to the slag handling and mill services performed by Fulton Mill Service. |
| | A | Primarily it's this monthly review. |
| | Q | Okay. |
| | A | Monthly billing reviews with our accounting group. That's about it, really. |
| | Q | Okay. Now, more specifically, are there any additional steps that are taken to ensure that Fulton Mill Service is complying with the safety and environmental aspects of the slag handling and mill services contract? |
| | A | From a yearly standpoint, all their employees will attend our site-specific contractor guidelines, and then anything on our plant site is managed with our safety process. |

(Joldrichsen Depo. pp. 23-24.)

Mr. Joldrichsen's testimony, when read in context, clearly demonstrates that North Star BlueScope received a review from FMS on its compliance with the contractor's requirements of the agreement – not specifically a "safety compliance" review conducted by North Star BlueScope as implied by Plaintiffs. (Memo in Opp, p. 11.) When asked about FMS's compliance with the safety and environmental aspects of the slag handling and mill services contract, Mr. Joldrichsen indicated that employees attend "site-specific contractor guidelines" on a <u>yearly</u> basis. Mr. Joldrichsen does not, at any point, testify that monthly meetings are held to direct or control FMS's operations, including those related to safety, at the slag plant. Instead, Mr. Joldrichsen testifies that the compliance of the contractor's requirements is mainly a monthly billing review. (Joldrichsen Dep. p, 23.) Further, the governing contracts referenced by Plaintiffs in their Memorandum in Opposition, including OSHA, ANSI, and others, are not even questioned upon or identified by either party in the deposition transcripts cited.

Finally, when asked if North Star BlueScope has any authority to enforce compliance with safety measures with respect to the slag plant located on its property, Mr. Joldrichsen responded "We would expect [FMS] to build it to whatever code and requirements are required. Because they're the experts on that, North Star BlueScope's not." (Joldrichsen Depo, p. 26.) It is

clear that Mr. Joldrichsen's testimony, when read in context, demonstrates that FMS reported to North Star BlueScope as to how it was operating its slag plant and its compliance with the contract requirements. There is no testimony indicating North Star BlueScope actively participated or exercised control over FMS's operations or Mr. Lucio's work activity.

## II. The Agreements Between North Star BlueScope and Fulton Mill Service Do Not Create a Duty of Care.

In their Memorandum in Opposition, Plaintiffs repeatedly reference sections of the Slag Handling and Mill Services Agreements that relate to promises made by Edw. C. Levy Co. (Memo in Opp at pp. 5, 7-10.) However, Edw. C. Levy Co. promises have no bearing on the issue of nonliability of a property owner as to an independent contractor's employee engaging in inherently dangerous work.

Plaintiffs cite to the Slag Handling and Mill Services Contract Specifications in support of their position that North Star BlueScope entered into an agreement intended to benefit FMS employees like Mr. Lucio. However, the excerpts cited by Plaintiffs mention North Star BlueScope only once, stating: "it is the goal of the management of North Star-NHP Steel to operate a site where there are no lost time injuries to any personnel associated with the operation…" (Memo in Opp at p. 5.) This partial statement cannot be considered outside the entirety of the Amended and Restated Slag Handling and Mill Services Agreement ("Slag Handling Agreement"). Plaintiffs attempt to use this referenced language from the Slag Handling and Mill Services Contract Specifications to establish that North Star BlueScope had a contractual obligation to control safety compliance at FMS (Mr. Lucio's work place). A mere statement of a "goal" does not establish factual evidence of control by North Star BlueScope or contractual liability to an FMS employee. The Slag Handling Agreement states that FMS is responsible for the supervision of its employees and controls all aspects of its employees' employment, including compliance with all site safety requirements. (Slag Handling Agreement, Exhibit 1 to Motion, at § 15.) The brief mention of North Star BlueScope in the Slag Handling

and Mill Services Contract Specifications does not establish a duty of care on part of North Star BlueScope different or apart from the duty of care at issue in this case, in which a property owner has a presumption of nonliability to an independent contractor's employee performing an inherently dangerous activity. Plaintiffs have provided no evidence to demonstrate that North Star BlueScope is contractually liable to Mr. Lucio as a third party beneficiary.

### III.     Mr. Lucio Made the Decision Not to Use Proper Safety Equipment Against the Recommendation of his Employer.

There is no disputed fact that Mr. Lucio was fully aware of the requirement to wear a safety harness and the availability of such gear while performing the activity that lead to his accident. In their Memorandum in Opposition, Plaintiffs cite to (1) the Levy Steel Mill Services Cardinal Rules that state "Employees must utilize fall protection when working at unprotected heights above four (4) feet," and (2) the Edw. C. Levy Co. Fall Protection manual that provides "One hundred percent (100%) fall protection will be provided for all employees…" (Memo in Opp at pp. 8-9.) Further, Plaintiffs note that "[t]he record [] contains safety handouts and a quiz, successfully completed by Mr. Lucio, regarding the necessity of proper fall protection." Indeed, the undisputed evidence shows that there was a recognizable risk in performing the activity of changing the screens in Tower 2; that Mr. Lucio was educated on the risk; and Mr. Lucio, himself, was in control of whether he wore fall protection gear or chose to bypass safety procedures despite knowing the danger. Plaintiffs present no evidence to dispute the facts that Mr. Lucio was aware of the recommended safety procedures and that the fall protection gear was made available for his use. Further, Plaintiffs present no evidence to dispute the fact that North Star BlueScope had no participation or control in Mr. Lucio's task of changing the screens on Tower 2 or his choice to ignore obvious safety warnings and not wear a safety harness while performing the task of changing the Tower 2 screens. Mr. Lucio, knowing the work environment and activity was dangerous, chose to proceed without fall protection gear. Accordingly, Plaintiffs fail to establish a genuine issue of fact for trial as it relates to the exception of

nonliability of North Star Blue Scope. North Star BlueScope is therefore entitled to summary judgment on Plaintiffs' claim for premises liability.

### IV. Mrs. Lucio's Loss of Consortium Claim Against North Star BlueScope Fails Because her Husband's Claims Fail as a Matter of Law.

Plaintiffs' loss of consortium claim is contingent upon the success of their claim for premises liability. *Walburn v. Lockheed Martin Util. Servs.,* 2010 WL 1253601, *7 (S.D. Ohio). Plaintiffs have provided no evidence to dispute that the loss of consortium claim survives independently of Mr. Lucio's premises liability action. Accordingly, because North Star BlueScope is not liable to Mr. Lucio in tort, North Star BlueScope is entitled to summary judgment on Mrs. Lucio's claim for loss of consortium.

### CONCLUSION

Plaintiffs fail to meet their burden of establishing a triable issue of fact under Civ.R. 56(E). The evidence presented shows there is no genuine issue of material fact in this case as to Plaintiffs' claims against North Star BlueScope. North Star BlueScope did not control or direct Mr. Lucio's work activities; North Star BlueScope did not actively participate in the operation of Mr. Lucio's job; nor did North Star BlueScope exercise control over a critical variable in Mr. Lucio's work area. Applying Ohio's general rule of nonliability, reasonable minds could only conclude that North Star BlueScope owed no duty of care to Mr. Lucio. Accordingly, North Star BlueScope is entitled to judgment as a matter of law on Plaintiffs' claims for premises liability and loss of consortium.

Respectfully submitted,

/s/ *Jennie K. Ferguson*
Charles E. Ticknor, III (0042559)
Jennie K. Ferguson (0081086)
DINSMORE & SHOHL, LLP
191 W. Nationwide Boulevard, Suite 300
Columbus, Ohio 43215
Phone: (614) 628-6880
Fax: (614) 628-6890
Email: charles.ticknor@dinsmore.com
Email: jennie.ferguson@dinsmore.com
*Counsel for Defendant North Star BlueScope Steel, LLC*

**Certificate of Service**

I certify that a copy of the foregoing Reply in Support of Defendant North Star BlueScope Steel, LLC's Motion for Summary Judgment was served on all counsel of record by means of filing using the electronic filing system of the Court and automatic notice procedure of that system, on May 10, 2016.

/s/ *Jennie K. Ferguson*
*Counsel for Defendant North Star BlueScope Steel, LLC*