# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| **THEODORE LUCIO, et al.,** | * | Case No. 3:15-cv-00613-JJH |
| Plaintiffs, | * | JUDGE JEFFREY J. HELMICK |
| v. | * | **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT EDW. C. LEVY CO.'S MOTION TO EXCLUDE OPINION OF MICHAEL WRIGHT** |
| **EDW. C. LEVY CO., et al.,** | * | |
| Defendants. | * | |
| | * | |

Plaintiffs Theodore Lucio, et al., by and through counsel, respectfully enter their opposition to Defendant Edw. C. Levy Co.'s motion to exclude various opinions proffered by Michael Wright as well as portions of his report. Defendant's subsidiary—Levy Environmental Services Company—filed a very similar motion in Case No. 3:14-CV-01849 to exclude Vincent Gallagher (Doc. No. 33). The court denied that request and for many of those reasons, the instant motion should be similarly denied.

Mr. Wright's qualifications and experience have not been challenged by Defendant Edw. C. Levy Co. nor have his opinions regarding ANSI[1] or the Defendant's violation of its own safety policies. The Defendant focused only on Mr. Wright's discussion of OSHA, the Ohio Administrative Code, the Ohio International Building Code, the operative contracts,

---
[1] The American National Standards Institute

and one sentence about the Defendant's volitional failure to comply with customary industry safety practice. For the reasons outlined in the accompanying Memorandum in Opposition, Defendant Edw. C. Levy Co.'s motion should be denied.

> Respectfully submitted,
>
> **GALLON, TAKACS, BOISSONEUALT & SCHAFFER CO., L.P.A.**
>
> By: /s/ Kevin J. Boissoneault
> Kevin J. Boissoneault
> Jonathan M. Ashton
> 3516 Granite Circle
> Toledo, OH 43617
> (419) 843-2001
> (419) 841-2608 (FAX)
> kboisson@gallonlaw.com
> jashton@gallonlaw.com
> Attorneys for Plaintiffs

<u>MEMORANDUM IN OPPOSITION</u>

**I. Background**

There is no dispute that Mr. Lucio suffered serious and permanent injuries when he fell approximately twenty-five feet from an unguarded screen deck on a slag mill tower on February 25, 2013. Mr. Lucio's claim against Defendant Edw. C. Levy Co. sounds in simple negligence; by virtue of the Defendant's active participation in all aspects of site safety at the slag mill, Edw. C. Levy Co. owed a duty of care to Mr. Lucio. In turn, because the Defendant failed to comply with any governmental or industry safety standard applicable to the job site—most notably its own corporate safety policies—Edw. C. Levy Co. was negligent.

2

Factually, Defendant Edw. C. Levy Co.'s active participation in, and control over, the critical safety variables of the jobsite cannot be disputed. As outlined in Plaintiffs' summary judgment opposition: Defendant Edw. C. Levy Co. designed and built the slag mill, promulgated all site safety rules, and required that safety issues be reported to Edw. C. Levy Co. personnel. Michael Wright's education, training, and experience are relevant, reliable, and will aid the jury in determining Defendant Edw. C. Levy Co.'s liability at trial based on these facts. Mr. Wright's report and attached affidavit capably detail his qualifications to testify as an expert witness in this case.[2]

The topics raised by Defendant Edw. C. Levy Co. largely center around the misplaced notion that Plaintiffs' case is based on whether or not Defendant Edw. C. Levy Co. violated any number of governmental regulations—particularly OSHA—as well as the misstatement that OSHA does not apply to the slag mill. Neither assertion is remotely true. As discussed in his report, and detailed more specifically in his affidavit, OSHA regulations (as well as the Ohio Administrative Code/VSSR, ANSI, and the Ohio International Building Code) are relevant because they articulate the various responsibilities which apply to

---

[2] Please see Exhibit 1: Affidavit of Michael Wright. Mr. Wright has not, to date, visited the slag mill which has undergone changes since the incident. He has reviewed voluminous governmental investigations and related photographs. Judge Carr's discussion of this issue in Case No. 3:14-CV-01849, Doc. No. 41, at fn.4 is particularly instructive on this point:

> Levy attacks Gallagher's qualifications to testify on this issue by pointing out he "has never seen this, or any, slag mill in operation, nor has he been to any other slag plant." (Doc. 33-1 at 6). That does not matter. What matters, vis-a-vis his qualification, is that he knows the dangers of being injured in a fall in multiple worksite situations. See *U.S. v. Barker*, 553 F.2d 1013, 1024 (6th Cir. 1977) ("[A] proposed expert witness should not be required to satisfy an overly narrow test of his own qualifications.") (internal quotation marks and citation omitted). Given the endless variety of workplace circumstances, many of which probably are unique, even on similar jobsites, to adopt Levy's tunnel-vision view would eliminate, as a practical matter, almost all expert testimony in these type of cases except in that rare instance when the same expert had visited the same site following the same sort of accident. Indeed, broad, rather than limited experience probably enhances an expert's qualifications.

companies like Edw. C. Levy Co. in work setting like the slag mill. That context is important as it demonstrates to the jury, *inter alia*, that the Plaintiffs' claims are not spun from whole cloth. Levy Environmental Services Company made this same argument about finding actionable intent in Case No. 3:14-CV-01849. The argument was summarily and appropriately rejected.[3]

Brij Sapru designed the slag mill for Edw. C. Levy Co. He testified that he designed guardrails on a separate work platform on the slag mill to be in compliance with OSHA standards.[4] Similarly, handrails on the structure were designed to comply with OSHA as well.[5] Mr. Sapru testified that his design did not include a single certified tie-off point for a fall arrest system in the design of the slag mill.[6] Malcom Dunbar, Vice President of Corporate Safety for Edw. C. Levy Co., testified that slag mills and slag mill towers are not exempt from OSHA.[7] In spite of this evidence—setting aside Mr. Wright's analysis—Defendant Edw. C. Levy Co. has continually, and without any expert or factual support, represented the opposite to the Court.[8] In short, there are no special regulations for slag mills or any exemption from OSHA as demonstrated by the evidence.

---

[3] Judge Carr, in fn. 5 of Doc. No. 41, wrote:

> Levy argues violations of governmental and industry safety regulations are not admissible as proof in an intentional tort case. (Doc. 39 at 3-4). I agree, but Levy's argument nonetheless misses the mark. It is well-settled that an expert can relate the basis for his opinion even if that basis is not itself admissible. See, e.g., Mannino v. Int'l Mfg. Co., 650 F.2d 846, 853 (6th Cir. 1981) (expert can form opinion based on inadmissible evidence). I could alleviate any confusion that distinction might cause a jury with a cautionary instruction that safety standards and their violation are not proof of intent.

[4] Sapru Deposition, pp. 39-40. Mr. Sapru's deposition was previously filed with the Court.
[5] Sapru Deposition, p. 51
[6] Sapru Deposition, p. 32. Mr. Sapru's deposition has been filed with the Court. Mr. Sapru's testimony is one example of volitional noncompliance as well.
[7] Dunbar Depostion, p. 15. Mr. Dunbar's deposition was previously filed with the Court. Mr. Dunbar also testified on p. 15 that he never inquired about the feasibility of guard rails on the platform at Tower 2.
[8] In a separate filing, Defendant Edw. C. Levy has asked for additional time to retain and identify an expert yet the Defendant continues to make representations regarding which rules and regulations apply or do not apply based with absolutely no basis.

Mr. Wright's experience with contracts such as the agreement between the Defendants in this case is similarly misplaced. Separate and apart from his work as a litigation consultant, Mr. Wright is an industry consultant who is called upon to review contractor agreements and building plans similar to the documents which outline the rights and responsibilities of both Edw. C. Levy Co. and North Star BlueScope Steel, LLC.[9] Mr. Wright's qualifications, combined with his regulatory knowledge and practical experience, make him an excellent guide for the jury through potentially complicated factual disputes. For these reasons, he is qualified to testify, his methodology is sound, and his opinions are both reliable and relevant.

## LAW AND ARGUMENT

### I. Standard of Review

In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the United States Supreme Court held that the Federal Rules of Evidence, Rule 702, requires trial judges to perform a "gatekeeping role" when considering the admissibility of expert testimony. *Daubert,* 509 U.S. at 597, 113 S.Ct. 2786. Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise. Fed. R. Evid. 702.

The Supreme Court has also made clear that Rule 702 applies not only to scientific testimony but also to other types of expert testimony based on technical or other specialized

---

[9] Mr. Wright's affidavit addresses his experience with contracts.

5

knowledge. See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 148, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

The trial court's gatekeeping role is two-fold. First, the Court must determine whether the proffered testimony is reliable. See *Daubert,* 509 U.S. at 590, 113 S.Ct. 2786. The reliability assessment focuses on whether the reasoning or methodology underlying the testimony is scientifically valid. *Id.* The expert's testimony must be grounded in the methods and procedures of science and must be more than unsupported speculation or subjective belief. *Id.* Thus, the proponent of the testimony does not have the burden of proving that it is scientifically correct, but that by a preponderance of the evidence, it is reliable. In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 744 (3rd Cir.1994). The Supreme Court in *Daubert* set out four non-exclusive factors to aid in the determination of whether an expert's methodology is reliable. They are:

> (1) whether the theory or technique has been tested;
> (2) whether the theory or technique has been subjected to peer review and publication;
> (3) the known or potential rate of error of the method used and the existence and maintenance of standards controlling the technique's operation; and
> (4) whether the theory or method has been generally accepted by the scientific community. *Daubert,* 509 U.S. at 593-94, 113 S.Ct. 2786.

The Court in *Kumho Tire* stressed that, in assessing the reliability of expert testimony, whether scientific or otherwise, the trial judge may consider one or more of the *Daubert* factors when doing so will help determine that expert's reliability. *Kumho Tire,* 526 U.S. at 150, 119 S.Ct. 1167. The test of reliability is a "flexible" one, however, and the four *Daubert* factors do not constitute a "definitive checklist or test" but must be tailored to the facts of the particular case. *Id.,* quoting *Daubert,* 509 U.S. at 593, 113 S.Ct. 2786.

The particular factors will depend upon the unique circumstances of the expert testimony involved. See *Kumho Tire Co.,* 526 U.S. at 151-52, 119 S.Ct. 1167. "[W]hether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Id.* at 153, 119 S.Ct. 1167. The Court noted:

> In other cases, the relevant reliability concerns may focus upon personal knowledge or experience. As the Solicitor General points out, there are many different kinds of experts, and many different kinds of expertise. *See Brief for United States as Amicus Curiae,* 18-19 n.5 (citing cases involving experts in drug terms, hand-writing analysis, criminal modus operandi, land valuation, agricultural practices, railroad procedures, attorney's fee valuation, and others) ... We agree with the Solicitor General that "the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Brief for United States as Amicus Curiae,* 19. The conclusion in our view, is that we can neither rule out, nor rule in, for all cases and for all time the applicability of the factors mentioned in *Daubert*, nor can we now do so for subsets of cases categorized by category or expert or by kind of evidence. Too much depends upon the particular circumstances of the particular case at issue. *Id.* at 150, 119 S.Ct. 1167.

The second prong of the gatekeeping role requires an analysis of whether the expert's reasoning or methodology can be properly applied to the facts at issue, that is, whether the opinion is relevant to the facts at issue. See *Daubert,* 509 U.S. at 591-93, 113 S.Ct. 2786. This relevance requirement ensures that there is a "fit" between the testimony and the issue to be resolved by the trial. See *United States v. Bonds,* 12 F.3d 540, 555 (6th Cir.1993). Thus, an expert's testimony is admissible under Rule 702 if it "rests on a reliable foundation and is relevant...." *Kumho Tire Co. Ltd.,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) (internal quotation marks omitted).

The United States Supreme Court and other Circuit Courts of Appeal have made clear that a person, although qualified as an expert in one area of expertise, may be

precluded from offering opinions beyond that area of expertise, or that are not founded on a reliable methodology. See, *e.g., Kumho Tire Co., Ltd.,* 526 U.S. at 154-55, 119 S.Ct. 1167 (finding the proffered expert qualified as an expert in mechanical engineering, but that his methodology in analyzing a particular tire failure was not reliable); Weisgram v. Marley Company, 169 F.3d 514, 518 (8th Cir.1999) (holding that a city fire captain, although qualified as an expert on fire investigation, and therefore qualified to testify as to his opinion that a fire started in the entryway and radiated to a sofa, was not qualified to testify as to his unsubstantiated theories of a malfunction that might have caused the fire); Allison v. McGhan Medical Corp., 184 F.3d 1300 (11th Cir.1999) (proposed expert testimony of pathologist not permitted upon basis of unreliable methodologies in silicon breast implant case); Cummins v. Lyle Indus., 93 F.3d 362, 371 (7th Cir.1996) (industrial engineer not permitted to render an expert opinion regarding the adequacy of warnings, the adequacy of an instruction manual, and the feasibility of alternative designs for a trim press).

  The gatekeeper role, however, is not intended to supplant the adversary system or the role of the jury: "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert,* 509 U.S. at 596, 113 S.Ct. 2786. The judge's role is to keep unreliable and irrelevant information from the jury because of its inability to assist in factual determinations, its potential to create confusion, and its lack of probative value. As explained in *Kumho Tire,* the *Daubert* factors "do not all necessarily apply even in every instance in which the reliability of scientific testimony is challenged."

*Kumho Tire Co., Ltd.* 526 U.S. at 151. The Supreme Court summarized the purpose of *Daubert*'s gatekeeping requirement as follows:

> [It] is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field .... [W]e conclude that the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether the particular expert testimony is reliable. *Id.* at 152, 119 S.Ct. 1167.

Under the standard for expert testimony, Mr. Gallagher's opinions are based on reliable methodology and that methodology is applicable to the facts in this case.

## II. Michael Wright is qualified to be an expert in this case.

Though Edw. C. Levy Co. did not challenge Mr. Wright's qualifications, it important to note that he satisfies this initial inquiry. Fed. R. Evid. 702 requires a proffered expert to have "specialized knowledge" with regard to the area about which he will testify. "Although this requirement has always been treated liberally, as the Sixth Circuit recently observed in Pride v. BIC Corporation, 218 F.3d 566 (6th Cir. 2000), that liberal interpretation of this requirement 'does not mean that a witness is an expert simply because he claims to be.'" Berry v. Crown Equipment Corp., 108 F.Supp. 2d 743, 749 (E.D. Mich. 2000). "The court is to examine 'not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for the witness to answer a specific question.'"*Id.* (quoting Smelser v. Norfolk Southern Ry. Co., 105 F.3d 299, 303 (6th Cir. 1997). "Thus the trial court must determine whether the expert's training and qualifications relate to the subject matter of his proposed testimony." Id.; see also *Kumho*, 526 U.S. at 156 ("The trial court ha[s] to decide whether this particular expert ha[s] sufficient specialized knowledge to assist the jurors in deciding the particular issues in this case.").

Here, Michael Wright's background, training, education, and practical experience qualify him as a technical expert. Mr. Wright is a licensed Professional Engineer and a Certified Plant Engineer with more than 35 years of industry experience. He holds multiple degrees and, by virtue of passing a written examination, is a Certified Safety Professional through the Board of Certified Safety Professionals of the Americas.[10] He has been retained by clients including Lockheed Martin, Boeing, General Motors, and Ford among many others to provide safety training, safety engineering, and structural engineering services. He is an active member of many professional societies and groups, including several relevant ANSI committees.[11] Mr. Wright's qualifications clearly provide both a foundation for questions regarding Mr. Lucio's incident at the slag mill as well as the Defendants' responsibilities under the applicable site safety rules, regulations, and operative agreements.[12]

**III.   Michael Wright's opinions are relevant, reliable, and admissible.**

The Supreme Court in *Daubert* and *Kumho* made clear that the first step of the court's gate-keeping function is to determine whether a proffered expert's testimony is reliable. Defendant Edw. C. Levy Co. questioned Mr. Wright's methodology only narrowly in terms of whether a single hole in an I-beam above the sloped work platform could feasibly or safely be used as a tie-off point for a fall harness.[13] For context as to this line of questioning, not one investigation—the State of Ohio Safety Violations Unit (VSSR),

---

[10] Mr. Wright's Report, p. 3
[11] Mr. Wright's CV (Appendix A to his report) has also been filed with the Court along with a list of steel mill cases in which he has been a litigation consultant (Appendix B to his report).
[12] Mr. Wright's report and deposition transcript contain extensive analysis because this is a complex and fact-driven matter which unfortunately cannot be abridged.
[13] Edw. C. Levy also omitted Mr. Wright's responses and analysis, which begins at p. 19 of his deposition, including his position on the ANSI committee which deals with fall hazards and tie-off points.

OSHA, even the Defendant's own investigation—concluded that the slag mill had safe or certified tie off points or guardrails.[14] Mr. Sapru's testimony after the incident confirms that those investigations were correct.[15] Nevertheless, the Defendant presses on in this alternative universe where OSHA is inapplicable.

The OSHA regulations, industry standards, state regulations, and company safety policies provide important context for Mr. Wright's answers in his deposition and support the methodology stated in his report; namely, that singular hole did not exist in a vacuum where it was incumbent upon Mr. Lucio to figure out how to make it an appropriate tie-off point. Every applicable rule and regulation required Edw. C. Levy Co. to provide adequate fall protection—either guardrails or a certified tie-off point—and they <u>all</u> apply to slag mills contrary to the Defendant's assertions.

The second prong of the gatekeeping role requires an analysis of whether the expert's reasoning or methodology can be properly applied to the facts at issue; that is, whether the opinion is relevant to the facts at issue. Each of Mr. Wright's opinions concerns the actions and inactions of the Defendants in this case and the role each played in causing Mr. Lucio's injury incident. Defendant Edw. C. Levy Co., though, created the aforementioned straw man argument—Mr. Lucio's case is premised on OSHA violations as a proxy for duty in his negligence case—as a means for casting Mr. Wright's discussion of OSHA as irrelevant. Again, in this negligence case, the existence of applicable OSHA

---

[14] The investigations, as well as the technical design drawings, are part of Mr. Wright's file and all contain contemporaneous measurements and pictures related to the incident.

[15] During the State of Ohio VSSR Investigation, Levy Environmental Services Company attempted to represent that post-incident tie-off points actually existed prior to the incident. This point is discussed in detail in Mr. Lucio's opposition brief to Levy Environmental Services Company's summary judgment motion in Case No. 3:14-CV-01849 (Doc. No. 31), beginning at p. 15. That brief has previously been incorporated into the record in this Case by specific reference.

regulations do not establish a duty on the part of Edw. C. Levy Co. and the fact that OSHA regulations do not provide a private cause of action has no bearing on the outcome of this case or the relevance of Mr. Wright's testimony.[16] The various regulatory schemes analyzed by Mr. Wright serve to provide context for Mr. Lucio's claims and are not intended to establish negligence *per se*.

Slag mills, as with all work environments, are subject to compliance with any number of state, federal, and industrial regulations and standards. Mr. Wright's report, affidavits, and deposition testimony establish not only his knowledge and experience in this particular context, but also the relevance of each act or omission on the part of Defendant Edw. C. Levy Co. Without the regulatory scheme created by these standards the Defendant would be free to do in practice as it is attempting to do now before this Court—create its own, self-serving industry standards to the exclusion of reality. The Defendant's unsupported and baseless attacks on Mr. Wright must be rejected.

Michael Wright's opinions are reliable and the underlying methodology has been accepted for many years in the fields of safety and structural engineering. The gate-keeping inquires mandated by *Daubert*, *Kumho*, and their progeny are satisfied. Mr. Wright is a qualified technical expert in this case.

IV. **Conclusion**

For the reasons outlined in this Memorandum, and all evidence in the record, Plaintiffs pray that this Court DENY Defendant Edw. C. Levy Co.'s motion to exclude

---

[16] It is worth noting that OSHA contemplates multiple "employers" under certain circumstances which include the work performed by the various entities at the subject slag mill. The term "employer" or "employee" can look very different depending on the legal analysis, whether OSHA, common law, or statutory provisions. Please note further that OSHA defines several types of "employers"—controlling, creating, etc.

opinion of Michael Wright.

Respectfully submitted,<br>
**GALLON, TAKACS, BOISSONEUALT**<br>
**& SCHAFFER CO., L.P.A.**

By: /s/ Kevin J. Boissoneault<br>
Kevin J. Boissoneault<br>
Jonathan M. Ashton<br>
3516 Granite Circle<br>
Toledo, OH 43617<br>
(419) 843-2001<br>
(419) 841-2608 (FAX)<br>
kboisson@gallonlaw.com<br>
jashton@gallonlaw.com<br>
Attorneys for Plaintiffs

## CERTIFICATION OF FILING AND COMPLIANCE

I hereby certify that on this 24th day of May, 2016, a copy of the foregoing *Plaintiffs' Memorandum in Opposition to Defendant's Motion to Exclude Opinion of Michael Wright* was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

By: /s/ Kevin J. Boissoneault<br>
Kevin J. Boissoneault<br>
Jonathan M. Ashton